WAITE, In re.   See Case No. 7,170.

## Case No. 17,045.

### WAITE et al. v. The ANTELOPE.

[Bee, 233.] [1]

District Court, D. South Carolina.   Jan., 1807.

SALVAGE—RESCUE OF NEUTRAL VESSEL FROM BELLIGERENT.

Salvage is not due for rescuing the vessel of a neutral out of the hands of a belligerent who took possession of her for a supposed breach of treaty or of the law of nations.

In admiralty.

BEE, District Judge. The brig Antelope, an American bottom, and owned by American merchants residing in Baltimore, on her return from St. Thomas, a neutral island, to Baltimore, with a cargo belonging to American citizens, was, on the 6th day of December last, on the high seas, taken possession of by the British frigate Hebe. Six of the crew were removed into the frigate, and an officer and seven men of the latter were put on board of the Antelope, with orders to carry her to Jamaica for adjudication, upon the ground of having no certificate of the cargo signed by an American consul. Two days afterwards, the remainder of the crew of the Antelope, assisted by a number of passengers, overpowered the officer and men of the Hebe, and on the 20th December, brought the brig into the harbour of Charleston. They now libel for salvage. The owners, by their agent, have filed a plea in bar to the suit, alleging that this is not such a case as entitles to salvage, as a right. The court is called upon to decide whether this is a valid plea. The case is new, and important, both as respects these parties, and as tending to establish a precedent. Attempts are frequently made to extend the doctrine of salvage to cases where it does not apply. Salvage is due for assistance in dangerous situations at sea, and for property preserved, after having been cast on shore. So where it is rescued from enemies or pirates. But in all these instances it must be shewn that the thing saved was in danger, without such aid, of being lost, or materially injured. It cannot be denied that, according to the acknowledged law of nations, neutral vessels navigating the high seas are liable to examination and search; and, in some cases, to be carried into port for adjudication. All the modern treaties between maritime nations recognize this doctrine, and it has been expressly acceded to in the trea-

---

[1] [Reported by Hon. Thomas Bee, District Judge.]

ties to which the United States have, at any time, been a party. If on such investigation it appear that the neutral vessel was improperly detained, the tribunals of the belligerent are bound to restore her, with damages for loss and detention, and with costs of suit. But have the crew of a vessel so detained, a right to resist search in the first instance, or to recover the vessel by force of arms previously to adjudication? If lives are lost in attempting this, and the parties are afterwards retaken, may they not be proceeded against for murder? And will not confiscation of vessel and cargo be the consequence of merely an endeavour to rescue?

These are questions which I shall not enter into at present; but they ought to be seriously examined before attempts of this sort are made, and before claim of salvage is set up as being in all cases matter of right. That commerce has sustained very great injury by the wanton exercise of this power of the belligerents, every day's experience proves. Government, in this country, does not sleep over the violated rights of the citizens, and redress is sometimes obtained. It has much oftener been denied; but does this authorize individuals to take the law into their own hands, and by endeavouring to redress themselves, to expose the peace and happiness of their country? Certainly not. The same mode of reasoning will apply to the courts of the neutral power. In this country, they are bound, by the constitution of the United States, to determine according to treaties and the law of nations, wherever they apply. It would ill become them, then, to exercise jurisdiction expressly taken away by these treaties, and by this law; which, I apprehend, I should do, if I were to decree salvage in the present case as matter of right.

The cases quoted by the advocates on both sides relate wholly to recaptures of neutral vessels by one belligerent from another. In these instances it was the established practice to restore neutral property, without salvage, previously to the war produced by the French revolution. This was said to be a reasonable rule, no service of importance being rendered by the recaptor to the unoffending neutrals, who must be released with costs for seizure and detention, as soon as the original captor should bring the matter before the tribunals of his own nation. For it must be presumed that those tribunals know and respect the obligations laid upon them by the laws of nations. 2 Rob. Adm. 200. This doctrine is further recognized in 4 Rob. where it was decided that salvage was not due generally on a recapture of neutral property. It must be shewn that by some edict, or uniform practice, such property would have become subject to condemnation in the courts of prize of the capturing belligerent: in which case, salvage might be demanded. If this holds with respect to recaptures of neutrals among belligerents, it

must certainly apply with more force in the present case; and the plea in bar must be sustained. Let the libel be dismissed; but the costs must be paid by the claimants: for though I cannot give salvage as a legal right, I think the actors are entitled to liberal compensation for their zealous, though mistaken endeavours to serve the owners. Whether this court could lend its aid in any other shape need not, I hope, be inquired; and·I am persuaded, from the declaration made on behalf of the owners, that all further interference on my part will be unnecessary.