GREGORY CONSTRUCTION COMPANY, a Michigan Corporation, Plaintiff,

v.

James J. BLANCHARD, as Governor of the State of Michigan; Martha W. Griffiths, as Lieutenant Governor of the State of Michigan; Department of Military Affairs for the State of Michigan; Maj. Gen. Vernon J. Andrews, as Director and Adjutant General of the Department of Military Affairs for the State of Michigan; The Department of Management and Budget of the State of Michigan; Robert H. Naftaly, as Director of the Department of Management and Budget; Almon J. Durkee, as Director of Bureau of Facilities for the Department of Management and Budget of the State of Michigan; David Claus, as acting manager of Administrative Office of the Building Division of Bureau of Facilities of the State of Michigan; Richard H. Austin, as Secretary of State for the State of Michigan; John Roy Castillo, as Director of the Department of Civil Rights of the State of Michigan; Doug Ross, as Director of the Department of Commerce for the State of Michigan; James P. Pitz, as Director of the Department of Transportation for the State of Michigan; and Frank J. Kelley, as Attorney General for the State of Michigan, Defendants.

No. G86–366 CA5.

United States District Court, W.D. Michigan, S.D.

Aug. 1, 1988.

**18**

Raymond J. Carey, Butzel, Long, Gust, Klein & VanZile, Detroit, Mich., for plaintiff.

Brent E. Simmons, Asst. Atty. Gen., Lansing, Mich., for defendants.

## OPINION OF THE COURT

BELL, District Judge.

This action challenges the constitutionality of Michigan's Act for State Procurements for Minority and Woman Owned Businesses. Now before the Court are defendants' motions to dismiss and for summary judgment as well as plaintiff's cross-motion for summary judgment.

### I

The relevant facts are not disputed. In February, 1986, plaintiff Gregory Construction Company ("Gregory") responded to an invitation for bids from the Michigan Department of Management and Budget. Gregory offered to construct seven motor pool maintenance buildings and related site improvements at the Camp Grayling Annual Training Site for the sum of $894,000. Although Gregory's bid was apparently the lowest submitted, it was rejected as "nonresponsive," because Gregory's proposed minority owned and woman owned subcontractors were not certified as such by the Michigan Department of Civil Rights.

This certification requirement is a function of Michigan's Act for State Procurements for Minority and Woman Owned Businesses ("Act"), 1980 Mich.Pub.Act 428, M.C.L. § 450.771 *et seq.* The Act, is designed to promote increased participation by businesses owned and operated by minorities and women in furnishing construction, goods, and services to the executive departments of state government. In furtherance of this goal, the Act requires the governor to establish a procurement policy for each executive department. In compliance with such policy, the instructions to bidders issued by the Department of Management and Budget regarding the Camp Grayling project included the following provisions:

11.1 If the bidder is not a certified in state minority or woman owned business, the bidder, unless waivers are granted, must agree to expend ten (10) percent of the contract, if awarded, for certified in-state minority owned businesses and five (5) percent of the total contract amount to certified in-state woman owned businesses. The listing of minority owned businesses and woman owned businesses is a part of the proposal form and shall be completed and accompany proposals at time of submission. Failure to comply with this requirement will void the proposal.

11.2 Bidders are urged to verify with the Michigan Department of Civil Rights, Contract Compliance Division, Plaza Building, Detroit, Michigan, that all minority owned businesses and woman owned businesses proposed to participate on this project are certified in full compliance with the definition of minority owned business and woman owned business as described in 1980 PA 428.

It was because of its noncompliance with these requirements that Gregory was denied the Camp Grayling contract. But for defendants' implementation of the Act through these bid requirements, Gregory asserts, it would have been entitled to award of the contract.

Gregory asserts the Act imposes impermissible classifications based upon race, ethnic origin, and gender, in violation of

the Equal Protection Clause of the Fourteenth Amendment. The actions of defendants, various agencies and officials of state government, in implementing and enforcing the Act so as to deny Gregory the Camp Grayling contract, are said to be actionable as violative of Gregory's civil rights under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 2000d.[1] Gregory seeks declaratory, injunctive, and compensatory relief.

## II

■ In response, defendants assert this action is barred by the Eleventh Amendment:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In spite of its limited terms, the amendment has been construed as barring suit in federal court against a state by one of its own citizens as well. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). Thus, the fundamental doctrine of sovereign immunity is incorporated into the Constitution: a sovereign state may not be sued in federal court absent either unequivocal waiver of this immunity by the state or unequivocal abrogation of the immunity by Congress. *Id.*, 465 U.S. at 98–99, 104 S.Ct. at 906–07.

■ Moreover, the Eleventh Amendment operates to bar suit against state officials when the state is the real, substantial, party in interest. *Id.*, 465 U.S. at 101, 104 S.Ct. at 908. Relief sought nominally against an officer is deemed to be sought in fact against the state if the judgment would operate against the latter. *Id.* This rule describes the instant case exactly. The state agencies named as defendants are certainly administrative arms of state government and the individually named defendants are all sued in their official capacities for conduct occurring within the course of their official duties. A judgment against any of these defendants, awarding relief of any kind, would clearly and indisputably operate against the State of Michigan. Under these circumstances, there being no indication of a waiver or abrogation of sovereign immunity, the Eleventh Amendment would appear to bar this action *in toto*.

■ However, the courts have recognized an exception to the general rule. The Eleventh Amendment notwithstanding, *prospective* injunctive relief is available in the federal courts to prevent a continuing violation of federal law. *Papasan v. Allain*, 478 U.S. 265, 277–78, 106 S.Ct. 2932, 2939–2440, 92 L.Ed.2d 209 (1986); *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985); *Pennhurst, supra*, 465 U.S. at 102–103, 104 S.Ct. at 909. This exception has not been given expansive interpretation. When a plaintiff sues a state official alleging unconstitutional conduct, the federal court may award an injunction governing the official's future conduct, but not one that awards retroac-

---

1. 42 U.S.C. § 1981 provides:

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

   42 U.S.C. § 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

   42 U.S.C. § 2000d provides:

   No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

tive monetary relief. *Pennhurst, supra,* 465 U.S. 102–103, 104 S.Ct. at 909.

■ Accordingly, the Court concludes Gregory's claims are barred by the Eleventh Amendment except insofar as they include claims against individual state officials for declaratory and injunctive relief based on the asserted unconstitutionality of the Act.[2]

## III

■ Does the Act pass constitutional muster? Gregory's claims under 42 U.S.C. §§ 1981, 1983 and 2000d require the Court to scrutinize the Act under equal protection standards, for the protections afforded by these sections are coextensive with the protections afforded by the Equal Protection Clause. *Michigan Road Builders Association, Inc. v. Milliken,* 834 F.2d 583, 585 n. 3 (6th Cir.1987). Yet, this very same scrutiny has already been undertaken and completed by the Sixth Circuit Court of Appeals in a ruling which is binding upon this Court and upon the defendants in this case. *Id.*

In the *Michigan Road Builders* case, the Sixth Circuit Court addressed an identical challenge to the Act and concluded it is unconstitutional. 834 F.2d at 594–595. The court held (1) the Act's preferential treatment of minority owned business enterprises, to be valid, must be "narrowly tailored to serve a compelling governmental interest," and (2) that the Act's preferential treatment of woman owned business enterprises, to be valid, must be "substantially related to serve an important governmental interest." The court struck down

both classifications as unjustified because not supported by sufficiently strong governmental interests. Critical was the failure by the defendant state agencies and officials to establish the existence of past invidious discrimination against the preferred classes *by the State of Michigan.*

The *Michigan Road Builders* ruling, remanding the case to the District Court for the Eastern District of Michigan for entry of judgment in favor of plaintiffs (awarding declaratory and prospective injunctive relief), was issued on November 25, 1987, during the pendency of this action. Motion for rehearing and rehearing *en banc* was denied on February 23, 1988. And on March 9, 1988, the Sixth Circuit Court issued an order staying its mandate pending final disposition of the defendants' application to the Supreme Court for writ of certiorari. At present, the stay continues to be in force.

Here, the parties disagree as to the effect of *Michigan Road Builders* upon the present litigation. Defendants contend the Sixth Circuit Court's assessment of the Act's constitutional infirmity renders Gregory's claims moot and subject to dismissal. Indeed, if the case is moot, it does not satisfy the "case or controversy" requirement of Article III of the U.S. Constitution and this Court is powerless to adjudicate it. *Carras v. Williams,* 807 F.2d 1286, 1289 (6th Cir.1986). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89

---

**2.** This holding applies with equal force to Gregory's claims under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 2000d. Gregory asserts the Eleventh Amendment does not operate to bar claims for damages under 42 U.S.C. § 2000d, but offers no support for the proposition. While it appears an implied private right of action for retroactive relief under 42 U.S.C. § 2000d has been recognized where intentional discrimination is proved, see *Guardians Association v. Civil Service Commission of New York City,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), the Court is aware of no authority suggesting that such an action somehow avoids the several states' sovereign immunity under the Eleventh Amendment.

Naturally, if judgment in an action for monetary relief under 42 U.S.C. § 2000d would expend itself on the federal, as opposed to the state treasury, then an action against state officials may not be considered an action against the state for purposes of the Eleventh Amendment. *Pennhurst, supra,* 465 U.S. at 101, n. 11, 104 S.Ct. at 908 n. 11. Here, however, where the Camp Grayling construction project has already been completed and the federal funding therefor already expended, any compensatory relief would be payable exclusively from the state treasury. Under these circumstances, the Eleventh Amendment bars Gregory's claim for damages under 42 U.S.C. § 2000d.

S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). Mootness results when events occur during the pendency of an action which render the court unable to grant the requested relief. *Carras, supra,* 807 F.2d at 1289. Because the requested relief will not be forthcoming, the plaintiff is deemed to be without an interest sufficient to justify the court's ruling on the underlying issues. *Id.*

The *Michigan Road Builders* ruling represents an event occurring during the pendency of this action which is determinative of the issues here presented. However, it cannot be characterized as having rendered the action moot. Although it obviates the need for, and actually precludes re-adjudication of the issues determined therein, the *Michigan Road Builders* decision cannot be said to have rendered this Court unable to grant the relief requested. On the contrary, it compels the Court to grant the requested declaratory and injunctive relief.

This result is the function of the doctrine of *stare decisis:*

> [T]he doctrine of stare decisis makes a decision on a point of law in one case a binding precedent in future cases in the same court, and such courts as owe obedience to the decision, until such time as the effect of the decision is nullified in some fashion: reversed, vacated, or disapproved by a superior court, overruled by the court that made it, or rendered irrelevant by changes in the positive law.

1B *Moore's Federal Practice,* ¶ 0.402[2], pp. 25–27 (footnotes omitted). The *Michigan Road Builders* ruling is a decision, in a court whose decisions are binding precedent for this Court, upon the identical point of law raised in this case. In holding the Act unconstitutional, the court based its decision upon a searching evaluation of the Act's legislative history—the same task this Court is asked to undertake.[3] The *Michigan Road Builders* ruling is not materially distinguishable from the instant case. In the interests of stability and equal treatment which the doctrine of *stare*

*decisis* serves, the Court holds the ruling is binding upon this Court unless and until it is ultimately reversed by the Supreme Court or repudiated by the Sixth Circuit Court.

Furthermore, this result is also dictated by the doctrine of collateral estoppel:

> Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

*Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The doctrine applies to render the present state defendants bound by *Michigan Road Builders* in spite of nominal differences between the defendants named in both cases. This is so because, in both cases, all individual defendants, state government officials, were sued in their official capacities. "Official-capacity suits are, in reality, suits against government entities...." *Beard v. O'Neal,* 728 F.2d 894, 897 (7th Cir.1984). Thus, as discussed *supra,* the State of Michigan is the real party in interest in both cases. It follows, then, that by virtue of collateral estoppel, the present defendant state officials and agencies are bound by the *Michigan Road Builders* ruling against other state officials. *Id.*

## IV

Applying the doctrines of *stare decisis* and collateral estoppel, the Court must hold, consistent with *Michigan Road Builders Association, Inc. v. Milliken,* that the Act is unconstitutional. Gregory is entitled to summary judgment under Fed.R.Civ.P. 56(a), awarding the requested declaratory and injunctive relief. In addition, this result renders Gregory a "prevailing party" under 42 U.S.C. § 1988, entitled to award of a reasonable attorney's fee as

---

**3.** The suggestion that defendants are entitled to a second judicial evaluation based on a supplemented presentation of legislative history is without merit. That an ineffective presentation of legislative history may have been made in *Michigan Road Builders* does not deprive the ruling of precedential effect. *E.E.O.C. v. Trabucco,* 791 F.2d 1, 4 (1st Cir.1986).

part of its recoverable costs.[4]

An order consistent with this opinion shall issue forthwith. However, in as much as this decision is dependent almost entirely upon the *Michigan Road Builders* ruling, the Court is constrained to issue, on its own motion, a stay of the ensuing order consistent with the stay issued by the Sixth Circuit Court of Appeals in *Michigan Road Builders*. Accordingly, a stay of enforcement of the attached order, pending either foreclosure of defendants' right of appeal or final disposition of any appeal which may be filed in the Sixth Circuit Court, shall also issue forthwith.

### JUDGMENT ORDER

In accordance with this Court's written opinion issued on August 1, 1988,

IT IS HEREBY ORDERED that defendants' motion to dismiss is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that plaintiff's amended complaint is DISMISSED only to the extent that it contains claims for monetary damages;

IT IS FURTHER ORDERED that defendants' motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment as to those claims for declaratory and prospective injunctive relief which survive defendants' motion to dismiss, is GRANTED;

IT IS FURTHER ORDERED that 1980 Mich.Pub.Acts 428, M.C.L. § 450.771 *et seq.* is declared unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

IT IS FURTHER ORDERED that defendants, as well as their agents, assistants, employees, successors and all other persons acting in concert or cooperation with them, are hereby permanently enjoined henceforward from in any way applying, enforcing or otherwise implement-

ing the provisions of 1980 Mich.Pub.Acts 428, M.C.L. § 450.771 *et seq.*

IT IS FURTHER ORDERED that plaintiff is awarded its costs and reasonable attorney's fees, which amounts shall be determined by the Court upon submission of a verified bill of costs and legal services rendered after defendants have had reasonable opportunity to state their objections thereto.

### ORDER GRANTING STAY OF JUDGMENT ORDER

WHEREAS this Court's opinion and judgment order issued on August 1, 1988, is based on the Sixth Circuit Court of Appeals' decision in *Michigan Road Builders Association, Inc. v. Milliken*, 834 F.2d 583 (6th Cir.1987); and

WHEREAS, the Sixth Circuit Court deemed it appropriate to stay enforcement of its ruling pending final disposition on appeal to the United States Supreme Court;

NOW THEREFORE, IT IS HEREBY ORDERED, on the Court's own motion, that enforcement of the Court's judgment order shall be stayed pending either foreclosure of defendants' right of appeal or final disposition of any appeal which may be filed in the Sixth Circuit Court of Appeals.

---

**4.** The Eleventh Amendment does not insulate defendants from an award of attorney's fees under 42 U.S.C. § 1988. *Hutto v. Finney,* 437

U.S. 678, 692–93, 98 S.Ct. 2565, 2574–75, 57 L.Ed.2d 522 (1978).