**Kenneth ALEXANDER, Plaintiff,**

v.

**Barry DAVIS, Shannon Green, Amanda Winnicki, Gayle Wilson, Cheryl Belonga, J. Fitzpatrick, Mary Shipp, D. Rose and Wayne Gamelin, Defendants.**

**No. 2:02–CV–24.**

United States District Court,
W.D. Michigan,
Northern Division.

Sept. 22, 2003.

Kenneth Alexander, Jackson, MI, Pro se.

Christine M. Campbell, Lansing, MI, for Defendants.

## *OPINION*

ENSLEN, District Judge.

This matter is before the Court on Plaintiff Kenneth Alexander's Objections to Magistrate Judge Timothy P. Greeley's Report and Recommendation of August 18, 2003, which recommended dismissal of this case both on the merits and due to a failure to fully exhaust all claims asserted. The Court now reviews the Report, the Objections and the pertinent parts of the record *de novo* under 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b).

Upon such review, the Court determines that summary judgment was properly recommended on the merits for the reasons given in the last part of the Report—the last paragraph of page nine through the second paragraph of page fifteen. In particular, the doctrine of qualified immunity aptly supports the grant of summary judgment. *See Harlow v. Fitzgerald,* 457 U.S.

800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir.1999). Indeed, given the strength of the reasoning as to this aspect of the Report, the Court further finds with respect to 28 U.S.C. § 1915(a) that an appeal of the judgment would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 610 (6th Cir. 1997).

■ With this said, however, this Court disagrees with the Magistrate Judge's analysis of the statutory exhaustion requirement contained within the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(a). Since the disagreements are manifold, they deserve a full explication herein.[1]

Principally, Magistrate Judge Greeley has determined that the instant Complaint should be dismissed for lack of exhaustion because of his adherence to *Smeltzer v. Hook*, 235 F.Supp.2d 736 (W.D.Mich.2002), which employed a "total exhaustion rule," and his non-adherence to my previous decision in *Jenkins v. Toombs*, 32 F.Supp.2d 955 (W.D.Mich.1999), favoring the dismissal of only unexhausted claims. While this Court understands the Magistrate Judge's reluctance to question the most recent district court authority on this issue, in this case such reluctance is in error.

*Jenkins* stands, in part, for the proposition that the federal courts should not blithely create procedural rules without express directions from Congress. *Smeltzer* appears to agree, at least in this aspect, with *Jenkins* in that it cites with approval the Sixth Circuit Court of Appeals' decision in *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 842 (6th Cir.1994) for the proposition that the courts should not create judicial rules in the absence of Con-

gressional direction. *Smeltzer*, 235 F.Supp.2d at 743. The rest of the decision then seeks to justify a judge-made rule (total exhaustion) which is not supported by explicit statutory language.

The court, in *Smeltzer*, does reason, in part, that the language of section 1997e(a) supports this interpretation because the statutory exhaustion requirement uses the words "no action" instead of the words "no claim." This is a thin reed upon which to hang this interpretation since the legislative history of the statutory section demonstrates no concern with this issue. *See Jenkins*, 32 F.Supp.2d at 959. It is also suspect because, had Congress been actually cognizant of this issue, it would have chosen language which was far clearer in its intent, *such as*, "no action should be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted [with respect to every claim included within such action.]" 42 U.S.C. § 1997e(a) (modified). The absence of such explicit direction indicates that this is the kind of judicial adventure which *Kelley* and other Sixth Circuit decisions have counseled against.

■ In embarking on this adventure *Smeltzer* does purport to acknowledge the doctrine of *stare decisis*. Indeed, *Smeltzer* seeks to justify an opinion contrary to *Jenkins* on the ground that "[t]here is currently a split in this District concerning the validity of the 'total exhaustion' interpretation of 42 U.S.C. § 1997e(a)"—citing to the *Jenkins* decision and the *Smeltzer* court's own unpublished decision in *Keenan v. Twommy*, 1999 U.S. Dist. LEXIS 11829 (W.D.Mich. July 29, 1999). *Smeltzer*, 235 F.Supp.2d at 742. Of course, the

---

**1.** The Court also notes that the Plaintiff has complained (especially in his supplementary affidavit) that the Magistrate Judge ignored evidence that he had attempted to exhaust all

claims but was not permitted to exhaust them because of the conduct of prison officials. This is another reason to reject the exhaustion analysis.

problem with this analysis from the standpoint of *stare decisis* is that an unpublished decision in this circuit is not binding such that it does not create a conflict with a published, binding decision. *See McCloud v. Testa,* 97 F.3d 1536, 1559 n. 36 (6th Cir.1996); *see also* Richard W. Murphy, *Separation of Powers & the Horizontal Force of Precedent,* 78 Notre Dame L.Rev. 1075 (2003) (discussing the historical prospective of *stare decisis* and indicating that the majority of academic opinions do not favor attributing precedential value to unpublished decisions). From this standpoint the *Smeltzer* decision was decidedly unnecessary; though now, because of the split in authority created by *Smeltzer,* a further decision is needed to resolve the controversy left in its wake.

In terms of *stare decisis,* the Sixth Circuit has ruled as to its own precedent that the first published decision on an issue should bind later judges until overruled by the Circuit (sitting *en banc* ) or the United States Supreme Court. *Salmi v. Sec'y of Health & Human Services,* 774 F.2d 685 (6th Cir.1985). While the Sixth Circuit has not directly applied this rule to district court precedent (precisely because it has had no reason to do so since it is not bound by district court precedent), there is no reason to understand *stare decisis* much differently in the district courts.

Indeed, the importance of *stare decisis* in the district courts is apparent in at least two contexts. The Sixth Circuit has acknowledged in the context of qualified immunity that decisions of the district courts serve as binding precedents within those districts (though subject to review by higher courts).[2] *See, e.g., Gean v. Hattaway,* 330 F.3d 758, 767 (6th Cir.2003); *Heggen v. Lee,* 284 F.3d 675, 686 (6th Cir.2002); *Cope v. Heltsley,* 128 F.3d 452, 458 n. 4 (6th Cir.1997). Further, the precedential value of district court decisions has been widely recognized in the federal courts in the context of *vacatur* ever since the Supreme Court's decision in *United States v. Munsingwear,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950), which recognized that *vacatur* was necessary to prevent a district court decision from having the force of precedent. According to the Supreme Court, *vacatur* of published decisions (whether by the district court or circuit court) is necessary to prevent those decisions from having precedential value and, because of this power, *vacatur* is to be used rarely and judiciously. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,* 513 U.S. 18, 28, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994); *Karcher v. May,* 484 U.S. 72, 83, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987); *see also Mich. Bell Tel. Co. v. Engler,* 72 Fed.Appx. 380, 385–86, 2003 WL 21920105, at *5 (6th Cir.2003).

This understanding of *stare decisis* is also consistent with the understanding of it in published decisions from this District, including the decision of the Honorable Robert Holmes Bell in *Gregory Const. Co. v. Blanchard,* 691 F.Supp. 17, 21 (W.D.Mich.1988). *Gregory* stated:

> [T]he doctrine of *stare decisis* makes a decision on a point of law in one case a binding precedent in future cases *in the*

---

**2.** One might argue that district court precedent is binding only upon the judge that decided the case and not upon the whole district. This argument, though, would destroy the function of *stare decisis* in a multi-judge district using random assignments because it would leave citizens, prior to litigation and judicial assignment, unable to adhere their conduct to the law. It would also encourage unsettled precedent within the district and would cause precedent to perish with the retirement or death of active judges. This kind of an understanding is also contrary to the history of district court adjudication—which has long understood itself as possessing some degree of precedential value. *See, e.g., The Antelope,* 28 F. Cas. 1341, 1341 (D.S.C.1807).

*same court* (italics supplied), and such courts as owe obedience to the decision, until such time as the effect of the decision is nullified in some fashion: reversed, vacated, or disapproved by a superior court, overruled by the court that made it, or rendered irrelevant by changes in the positive law.

*Id.* (quoting 1B Moore's Federal Practice, ¶ 0.402[2], pp. 25–27). *See also Hubbard v. United States,* 514 U.S. 695, 711, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995) (quoting Benjamin Cardozo, *The Nature of the Judicial Process,* at 149 (1921), for the proposition that " 'The labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one's own course of bricks on the secure foundation of the courses laid by others who have gone before him,' "); *Hilton v. S.C. Public Rys. Com'n,* 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (quoting *Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) for the proposition that, " '[c]onsiderations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.' ").

Nevertheless, the precedent of the district court is just that, the precedent of the district court. Therefore, it must yield readily to the precedent of superior courts—in this case the Sixth Circuit and the Supreme Court. What is odd about the *Smeltzer* decision is that there were no intervening binding decisions of the Sixth Circuit or Supreme Court to warrant a change in precedent. To be true, *Smeltzer* did remark on some unpublished Sixth Circuit decisions (the majority of which adopted the *Jenkins* approach and not the *Smeltzer* approach). However, reading unpublished decisions is an unreliable pro-

cess, precisely because the authors did not intend reliance upon those decisions.

*Smeltzer,* though, did rely upon one significant published, though non-binding, recent decision for its reasoning—the Eighth Circuit's decision in *Graves v. Norris,* 218 F.3d 884, 886 (8th Cir.2000), which adopted a total exhaustion rule. Interestingly, the Eighth Circuit in the more recent case of *Kozohorsky v. Harmon,* 332 F.3d 1141, 1144 (8th Cir.2003), reversed a district court which applied a total exhaustion rule without permitting the plaintiff to amend his complaint to dismiss the unexhausted claims, thereby avoiding dismissal. In light of this holding, it appears that the Eighth Circuit approach might actually be closer to *Jenkins* than *Smeltzer.* In any event, if a total exhaustion rule must be applied, it must be ameliorated by others rules of law, typically applicable to habeas corpus actions, which prevent it from being applied unjustly (*i.e.,* the use of the doctrine to dismiss valid and exhausted claims). If such must be done, then the Sixth Circuit appears much better positioned than the district courts to adjudicate exactly what kind of adjustments should be made to a judge-made rule not created by Congress. In other words, the task of implementing a total exhaustion rule without express guidance from the higher courts does not serve the interests of the public in understanding the law and conforming to the law.

To reiterate, there was no supportable legal basis other than the decision in *Graves* (which itself is unbinding in this Circuit) for questioning the decision in *Jenkins.* Further, *Graves* has been substantially undercut by *Kozohorsky,* and does not now provide a principled basis for departing from the rule in *Jenkins.* The Court views the rule in *Jenkins* as the controlling precedent of this District until such time as either the Sixth Circuit, a

majority of other Circuits, or the Supreme Court speaks to this issue.

## *CONCLUSION*

For the reasons stated herein, the Report will be adopted in part and rejected in part. A Judgment shall issue consistent with this Opinion.

## *JUDGMENT*

In accordance with the Opinion of this date;

**IT IS HEREBY ORDERED** that Plaintiff Kenneth Alexander's Objections (Dkt. Nos. 126 & 128) are **DENIED,** the Report and Recommendation of August 18, 2003 is **ADOPTED IN PART AND REJECTED IN PART,** Defendants' Motions for Summary Judgment (Dkt. Nos. 59, 92 & 113) are **GRANTED** in all respects except for the requests to dismiss because of lack of exhaustion, all claims brought are **DISMISSED on the merits,** and the Court certifies pursuant to 28 U.S.C. § 1915(a) that an appeal of this Judgment would not be taken in good faith.