**Frederick A. COOPER, Plaintiff,**

v.

**Rosie B. GARCIA, et al., Defendants.**

**No. 98CV1937 (LAB).**

United States District Court,
S.D. California.

May 27, 1999.

Bill Lockyer, Atty. General, State of California, David P. Druliner, Chief Asst. Atty. General, Morris Lenk, Acting Senior Asst. Atty. General, Barbara C. Spiegel, Supervising Deputy Atty. General, Diane de Kervor, Deputy Atty. General, San Diego, CA, for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [Doc. No. 11]

BURNS, United States Magistrate Judge.

Pending before this Court is defendants Motion to Dismiss the Complaint against Rosie Garcia, O'Donnell, and J. Nettles under Federal Rule of Civil Procedure Rules 12(b), 12(b)(1), and 12(b)(6). [Doc.

No. 11.][1] Plaintiff in pro per, Frederick A. Cooper, did not file an Opposition to the motion. Moving parties did not request any oral argument. The matter was taken under submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). Upon careful consideration of the facts and the law and with good cause appearing, defendants' motion to dismiss is *GRANTED;* however, plaintiff shall be granted 60 days leave to amend his Eighth Amendment (Count 1) claim for relief only. All other claims for relief are *DISMISSED* as set forth below.

## I. BACKGROUND

Plaintiff, an inmate at Centinela State Prison, has filed a pro se complaint seeking damages and injunctive relief pursuant to 42 U.S.C. § 1983 alleging two constitutional claims. First, plaintiff claims his Eighth Amendment right to be free from cruel and unusual punishment is being violated by defendants because prison officials have denied plaintiff family visitation privileges. Presumably, although it is far from clear, plaintiff claims he is being denied family visitation because the prison has classified him with an "R-suffix," signifying a history of sex offenses.[2] Plaintiff claims the denial of family visitation is inappropriate because he has never been convicted of a sex offense although he concedes he has been arrested for one. Second, plaintiff contends that his Fourteenth Amendment right to procedural due process was violated when prison officials decided to classify him as an "R" suffix

prisoner without conducting an "individualized assessment" of his risk to others.

It appears from the complaint and its attachments that plaintiff has only exhausted his administrative remedies with respect to his procedural due process claim (Count 2). *See* Compl., Exhibits A & B. Although plaintiff attached a page to his "Director's Level" appeal mentioning the denial of family visits which presumably resulted from his "R" suffix, the gravamen of his administrative grievance is that he should never have been "R" classified in the first place. Plaintiff also attached a "Family Visitation Application" which was denied by prison officials on June 17, 1998, because plaintiff's "C-file indicates an offense that does not permit conjugal visits." *Id.* However, plaintiff has not provided any evidence that he filed a separate CDC 602 form related to the June 17, 1998, visitation denial. In fact, the CDC 602 form which has been exhausted was originally filed on April 30, 1998—almost two months *before* plaintiff's request for a family visit was denied. In sum, it appears that plaintiff never administratively appealed his first claim for relief that the denial of family visits was cruel and unusual punishment in violation of the Eighth Amendment (Count 1); however, he has exhausted his procedural due process cause of action (Count 2).

Defendants maintain that because plaintiff failed to exhaust his administrative remedies as to the Eighth Amendment claim (as it relates to the denial of family

---

1. Defendants Garcia, O'Donnell, and Nettles are, respectively, the Warden, a Correctional Counselor, and the "F.C. Chairperson/Committee Member Captain" at Centinela State Prison.

2. The meaning of an "R" suffix is set forth in Title 15 CAL.CODE REGS. § 3377.1(b), which states, in pertinent part:
 (b) An "R" suffix shall be affixed by a classification committee to the inmate's custody designation to alert staff of inmates who have a history of specific offenses.
 (1) The "R" suffix shall be designated for any inmate who was convicted of, or whose

commitment offense includes an act equivalent to any of the following offenses:
(A) Assault with intent to commit rape....
(B) Rape....
(2) Within six months upon reception of an inmate with a record of arrest or detention for any offenses listed in section 3377.1(b)(1), a classification committee shall determine the need for an "R" suffix to the inmate's custody designation. The committee shall consider the arrest reports and district attorney's comments related to each such arrest.

visits) as required by 42 U.S.C. § 1997e(a), that the Court is without jurisdiction to hear any of plaintiff's claims. Defendants also allege that plaintiff's claims do not state a cause of action under 42 U.S.C. § 1983, that plaintiff has not demonstrated any injury, and that defendants are entitled to qualified immunity.

## II. *JURISDICTION*

Defendants move to dismiss plaintiff's complaint under FED.R.CIV.P. 12 arguing that this Court lacks subject matter jurisdiction over his section 1983 claims because he has not exhausted available administrative remedies pursuant to 42 U.S.C. § 1997e(a). Mot. at 4–6. 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The civil rights statutes, including section 1983, do not independently create a basis of jurisdiction. Rather, separate jurisdictional counterparts exist in Title 28. *See, e.g.,* 28 U.S.C. § 1343(a)(3) (the jurisdictional counterpart to 42 U.S.C. § 1983, giving district courts original jurisdiction over civil actions to "redress the deprivation, under color of state law, ... [of] any right, privilege or immunity secured by the Constitution of the United States"); *id.* § 1331 (conferring federal question jurisdiction). Section 1997e(a) does not explicitly state that the failure to exhaust divests the Court of the power conferred under sections 1343 and 1331 to hear and decide civil right cases filed by prisoners.

Although the Ninth Circuit has yet to decide whether failure to exhaust under the Prison Litigation Reform Act of 1995 ("PLRA") impliedly deprives the district court of subject matter jurisdiction, this Court relies on the Sixth Circuit opinion *Wright v. Morris,* 111 F.3d 414, 421 (6th Cir.), *cert denied,* —— U.S. ——, 118 S.Ct.

263, 139 L.Ed.2d 190 (1997), and concludes that it does not. In *Wright,* the Sixth Circuit held that 42 U.S.C. § 1997e(a)'s exhaustion requirement was not jurisdictional for purposes of deciding whether the statute may be applied to cases pending at the time of enactment. *Id.* at 420. *Wright* distinguished section 1997e(a) from "jurisdictional" statutes—those that "'speak to the power of the court rather that to the rights or the obligations of the parties,'" *id.* (quoting *Landgraf v. USI Film Products.,* 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)), and found that "[s]ection 1997e(a), in contrast, addresses a party's right to bring suit in court and does not speak in terms of jurisdiction or the power of the court; it is merely an exhaustion requirement." *Wright,* 111 F.3d at 420.

*Wright* further rejected the argument that section 1997e(a)'s new exhaustion requirement could be construed as "jurisdictional" under *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *Wright,* 111 F.3d at 421–22. In *Weinberger,* the Supreme Court held specifically that a statute requiring administrative exhaustion may be classified as jurisdictional only if it is "more than a codified requirement of administrative exhaustion." *Id.* at 757, 95 S.Ct. 2457. The Court held that only "sweeping and direct" statutory language which "states that 'no' action shall be brought," "not merely that only those actions shall be brought in which administrative remedies have been exhausted," bars district court federal question jurisdiction over suits. *Id.*

■ *Wright* held that section 1997e(a) contains no "sweeping and direct language" barring district court jurisdiction over federal question suits brought pursuant to the Civil Rights Act; rather, it "indicates 'merely that only those actions shall be brought in which administrative remedies have been exhausted.'" *Wright,* 111 F.3d at 421 (quoting *Weinberger,* 422

U.S. at 757, 95 S.Ct. 2457).[3] Accordingly, any failure by the plaintiff to administratively exhaust his claims does not deprive this Court of subject matter jurisdiction over this case.

## III. *EXHAUSTION UNDER SECTION 1997e(a) OF THE PLRA*

■ The PLRA, amended 42 U.S.C. § 1997e to provide that "no action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). Plaintiff, accordingly, must exhaust his federal claims by proceeding with a prison appeal all the way through the final Director's level of review. *See Barry v. Ratelle*, 985 F.Supp. 1235, 1237–38 (S.D.Cal.1997) (citing CAL.CODE REGS., tit. 15, § 3084.5).

It is clear from the complaint that plaintiff has exhausted his administrative remedies to the highest level with regard to his claim that the "R" suffix placed in plaintiff's prison records violates his right to procedural due process. *See* Compl., Exhibits A & B. Both the Second Level Response and the Director Level Decision of the California Department of Corrections considered plaintiff's request to remove the "R" suffix from his prison records, and determined that the Unit Classification Committee was justified in affixing an "R" suffix to plaintiff's file. *Id.*

■ It appears that defendants have erroneously relied on the notion that even if a prisoner has exhausted his administrative remedies to the California Department of Corrections "Director's Level" with respect to some claims, unless he has alleged

full exhaustion of *all* of claims, then the entire action should be dismissed. *See* Mot. at 4. This erroneous argument appears to stem from habeas jurisprudence which requires complete exhaustion of state *judicial* remedies. "Mixed" habeas petitions, i.e., those including both exhausted and unexhausted claims, must be dismissed in their entirety. *See Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Nothing in the language or legislative history of the PLRA's amendments to section 1997e(a) supports a "total" exhaustion requirement, and defendants have failed to explain how or why habeas law is or should be applicable in section 1983 litigation. "Post conviction relief [under 28 U.S.C. § 2254] and prisoner civil rights relief [under 42 U.S.C. § 1983] are analytically very different." *Martin v. United States*, 96 F.3d 853, 855 (7th Cir.1996); *see also Naddi v. Hill*, 106 F.3d 275, 277 (9th Cir.1997) (finding that the PLRA's filing fee provisions are inapplicable to section 2254 or 2255 proceedings).

In addition, imposing a total exhaustion requirement would appear to contradict Congress' intent in enacting the PLRA. The clear import of the Prison Litigation Reform Act, Pub.L. No. 104–134, Title VIII, §§ 801–10, 110 Stat. 1321–66 to 1321–77 (1996), as reflected in its title, is to curtail meritless prisoner litigation. Congress intended to discourage "frivolous and abusive prison lawsuits," *see* H.R.Rep. No. 104–378, 104th Cong., 1st Sess. 166 (1995) (the prison litigation reforms are intended to "discourage frivolous and abusive prison lawsuits"); and to prevent convicted criminals from receiving "preferential treatment" to that of "average law-abiding citizens." 144 Cong.Rec. 575251 daily ed. May 25, 1995 (statement of Sen.

---

**3.** *See also Wendell v. Asher*, 162 F.3d 887 (5th Cir.1998) (exhaustion requirement imposed by amended § 1997e is not jurisdictional. Section 1997e imposes a requirement, rather like a statute of limitations, that may be subject to certain defenses such as waiver, estoppel, or equitable tolling; thus exhaustion re-

quirement may, in certain rare instances, be excused); and *Lacey v. C.S.P. Solano Medical Staff*, 990 F.Supp. 1199, 1202–03 (E.D.Cal. 1997) (§ 1997e(a) does not impose exhaustion of administrative remedies as prerequisite to court's jurisdiction).

Dole); *Green v. Nottingham,* 90 F.3d 415, 417 (10th Cir.1996); *Schagene v. United States,* 37 Fed.Cl. 661, 661 (Fed.Cl.1997). However, as a purely practical matter, if the Court were to construe section 1997e(a) as imposing a total exhaustion requirement and dismiss the entire action, the prisoner would merely need to file a new suit alleging only his exhausted claims. Thus, because total exhaustion "delays the resolution of claims that are not frivolous ... and [ ] tends to increase, rather than alleviate, the caseload burden on ... [the] federal court[ ]," *Rose,* 455 U.S. at 522–23, 102 S.Ct. 1198 (Blackmun, J., concurring), and the plain language of section 1997e(a) does not explicitly require it, this Court has found it in the interests of judicial economy to reach the merits of those section 1983 claims that have been exhausted and dismiss only those that are not.[4]

Accordingly, because plaintiff has failed to administratively exhaust the allegations of his Eighth Amendment claim for relief (Count I), that claim is **DISMISSED** *without prejudice.* Plaintiff shall have *60 days leave to amend* his Eighth Amendment claim for relief for the purpose of demonstrating that all available administrative remedies have been exhausted with respect to this claim.[5] Should plaintiff fail to satisfactorily amend his complaint within 60 days to cure this deficiency in a new complaint which is complete in itself, the Eighth Amendment claim shall be dismissed by this Court upon motion by defendants or *sua sponte* by this Court with

prejudice and without further leave to amend.

## IV. *PROCEDURAL DUE PROCESS*

■ Where a plaintiff appears in propria persona in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.), *cert. denied,* 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 242 (1992). In giving liberal interpretation to a pro se civil rights complaint, the court may not "supply essential elements of [a] claim that w[as] not initially pled." *Ivey v. Board of Regents of the University of Alaska,* 673 F.2d 266, 268 (9th Cir.1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.* The court need not accept conclusory allegations in the complaint as true; rather, the court must "examine whether [they] follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian,* 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted). Where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate. *See Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 339 (9th Cir.1996).

Under 42 U.S.C. § 1983, a plaintiff has a cause of action against anyone who under

---

4. *See also Jenkins v. Toombs,* 32 F.Supp.2d 955, 959 (W.D.Mich.1999) (distinguishing § 1983 cases from habeas cases and refusing to apply *Rose v. Lundy's* "mixed" petition rules to § 1997e(a)).

5. This ruling should not be construed as an implicit finding by this Court that plaintiff's Eighth Amendment claim has any merit. In California, prison officials are allowed to establish clearance requirements for prisoner visitations to protect the safety and security of the institution and its visitors. CAL.CODE REGS, tit. 15, § 3170(e). California law does not grant inmates a constitutional right to family

visits while they are incarcerated. *Id.* Without a cognizable constitutional right, plaintiff can allege no facts sufficient to state a civil rights violation under § 1983. *See Toussaint v. McCarthy,* 801 F.2d 1080, 1114 ("[t]o the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society"; no Eight Amendment violation). However, because the Eighth Amendment issues have not been fleshed out via administrative appeals, plaintiff will have to exhaust this claim before this Court will address the issue on the merits.

color of state law deprives the plaintiff of a constitutional right. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Plaintiff contends that defendants violated his constitutional right to due process under the Fourteenth Amendment when they failed to provide him an "individualized assessment of security risks" in deciding to assign him an "R" suffix. Plaintiff contends that the "R" suffix is improper in his case because he was never convicted of a sex offense (i.e., the district attorney never prosecuted the case due to insufficient evidence) and the alleged rape victim lied in giving her statement to the police. Defendants, reading the complaint narrowly, contend that plaintiff's claim is simply that he wants the "R" suffix removed from his file because it is stigmatizing or slanderous; in which case, plaintiff fails to allege the denial of any "life, liberty, or property interest." Defendants also maintain that "the 'R' suffix classification does not result in any restrictions against the inmate." Mot. at 12.

However, construing plaintiff's complaint liberally, as this Court must do in a civil rights case filed by a pro se plaintiff (*see Karim–Panahi, supra,* and *Ferdik, supra*) it appears that plaintiff's complaint, which incorporates the administrative appeal and attachments, contends that the "R" suffix served as the basis for defendants' decision to deny plaintiff "family visitation" at the prison; in which case, the "R" suffix classification did result in a "restriction" against the inmate. Accordingly, plaintiff appears to allege that the "R" suffix affects his "liberty" interest in visiting his wife and children.[6] Should plaintiff prevail on his claim that he has been deprived of a liberty interest, defendants allege that plaintiff received all the process he was due by virtue of having received "an individualized assessment in two separate classification committee hearings at which he was present," thus, he was not denied "due process." Mot. at 9, *citing to* Ex. to Compl. at 3. Defendants contend that plaintiff received due process by virtue of two classification committee hearings, the first on August 1, 1996, and another on April 28, 1998, when he returned to prison for violating parole.

To plead a procedural due process violation, a plaintiff must allege: (1) a life, liberty or property interest exists and has been subject to an interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *See Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In addition to liberty interests which arise directly from the Due Process Clause of the Fourteenth Amendment to the Constitution,[7] courts have long recognized that state prison regulations may give rise to liberty interests that are protected by the Fourteenth Amendment. *See Meachum v. Fano,* 427 U.S. 215, 223–227, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (inmate had an unjustifiable expectation to be free from transfer as long as no misbehavior on file;

---

**6.** It should be noted that the plaintiff does not claim that he is in any way denied regular visiting privileges that are available to the general prison population.

**7.** *For e.g., Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (involuntary administration of psycho-

tropic drugs); *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (involuntary commitment to a mental hospital); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (revocation of parole).

no liberty interest to be free from transfers from one prison to another notwithstanding no misbehavior); *Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (state-created right to good time credits, which could be forfeited only for serious misbehavior, constituted liberty interest).

Traditionally, the Due Process Clause has been particularly protective of the minimal liberty interests granted to prisoners. In *Wolff*, the prison inmate argued that Nebraska granted him a liberty interest in good time credits that by statute could not be taken away except in specific instances. The Supreme Court agreed stating:

> But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitled him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557, 94 S.Ct. 2963 (internal citation omitted).

Following *Wolff*, many lower courts have found protected liberty interests of prisoners in state statutes and regulations. *See e.g., Allen v. Board of Pardons*, 792 F.2d 1404, 1408 (9th Cir.1986) (finding the Montana statute created liberty interest in parole); *McFarland v. Cassady*, 779 F.2d 1426, 1428 (9th Cir.1986) (holding that Arizona statute created liberty interest in good time credits). Such liberty interests cannot be eviscerated, absent penal authorities meeting specific substantive preconditions. *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In *Helms*, the Court noted that the adoption of procedural guidelines alone would not implicate the Fourteenth Amendment, but the "repeated use of explicitly mandatory language in connection with requiring" that specific preconditions be met before removing a prisoner from the general population "demands a conclusion that the State has created a protected liberty interest." *Id.* at 472, 103 S.Ct. 864. The Ninth Circuit has likewise used the mandatory language test to determine that state statutes or regulations have created a liberty interest within the meaning of the Fourteenth Amendment. *See Mendoza v. Blodgett*, 960 F.2d 1425 (9th Cir.1992) (as amended), *cert. denied*, 506 U.S. 1071, 113 S.Ct. 1027, 122 L.Ed.2d 173 (1993) (state regulation that provided prisoner could "be placed on Feces Watch only upon determination that there is a reasonable suspicion that [the prisoner] is currently secreting contraband" created a liberty interest within the meaning of the Fourteenth Amendment; the regulation contained particularized standards and criteria, and used "explicitly mandatory" language). *Id.* at 1429 (internal citation omitted).

Recently, however, the Supreme Court altered the relevant test. In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court reconsidered the question of under what circumstances a state statute grants prisoners a liberty interest recognized by the Due Process Clause. The Court began its analysis by criticizing the practice of examining the language in state statutes and regulations to determine whether a liberty interest was created. This practice, according to the Court, "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Sandin*, 515 U.S. at 481, 115 S.Ct. 2293. The Court expressed two policy concerns with this approach: first, it "creates disincentives for States to codify prison management procedures in the interest of uniform treatment," *id.;* second, it also "has led to the involvement of federal courts in the day-to-day management of prisons," contrary to cases affording state officials appropriate deference and flexibility in prison management. *Id.*

The *Sandin* Court held that states may still create liberty interests that afford prisoners due process protections, but explained:

> These interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* at 482, 115 S.Ct. 2293 (internal citations omitted).

In *Sandin,* the prisoner claimed that Hawaii prison regulations created a liberty interest in remaining free from disciplinary segregation. Applying this new standard to the situation in *Sandin,* the Court concluded that disciplining a prisoner for thirty days in segregated confinement "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293.

### A. *Family Visitation*

■ Under *Sandin,* Cooper lacks a constitutionally-derived[8] or a state-created liberty interest in California's "Family Visitation Program" because such a program is not an "ordinary incident of prison life." 515 U.S. at 482, 115 S.Ct. 2293. In fact, according to Title 15 Cal.Code Regs. § 3174, "Family visiting is a privilege" which has many limitations, for example, eligibility is "limited by the assignment of the inmate to a work/training incentive group as outlined in section 3044." Fur-

ther, family visits are not permitted "for inmates convicted of a violent offense involving a minor or family member or any sex offense, *which includes but is not limited to* the following Penal Code Sections: 187 (when the victim is a family member or minor); 192 (when the victim is a family member or minor); 261; 261.5; 262, 264.1; 266c; 266j; 273a; 273d; 273.5; 273.6; 285; 286; 288; 288a; 288.2; 288.5; 289; 289.5; 311.1; 311.2; 311.3; 311.4; 313.1; 314; or 647.6." *Id.* (emphasis added). Neither are visits permitted for inmates who are in any of the following categories: "sentenced to life without the possibility of parole; sentenced to life, without a parole date established by the Board of Prison Terms; designated Close A or Close B custody; designated a condemned inmate; assigned to a reception center; assigned to an administrative segregation unit; assigned to a security housing unit; designated 'C' status; guilty of one or more Division A or Division B offenses within the last twelve months; or guilty of narcotics trafficking while incarcerated in a state prison."

Even if this Court were to apply the *Helms* test's "mandatory language" to the facts of this case, it is clear that California regulations state that family visitation is a privilege. Cal.Code Regs. tit. 15, § 3174(e). While the regulations direct prison officials to extend family visiting to "as many inmates as is possible commensurate with institution security," *id.* § 3174, the regulations do not specify the relevant criteria to use in deciding which prisoners should be granted family visitation privileges. The California regulations

---

8. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (Protected liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States" (citing *Hewitt v. Helms,* 459 U.S. at 466, 103 S.Ct. 864); "an inmate's interest in unfettered visitation is not guaranteed by the Due Process Clause."); *see also Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) ("As long as the condi-

tions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"); and *Hewitt v. Helms,* 459 U.S. at 468, 103 S.Ct. 864 (denial of prison access to particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence," and therefore, is not independently protected by Due Process Clause).

thus do not mandate particular outcomes based on substantive predicates as required to create a state liberty interest protected by the Fourteenth Amendment. *See Thompson*, 490 U.S. at 463, 109 S.Ct. 1904.

Although the Ninth Circuit has never squarely addressed whether the deprivation of family visitation privileges implicates a "liberty interest" subject to the Due Process Clause of the Fourteenth Amendment, the Ninth Circuit has held, in the context of an Eighth Amendment claim, that the denial of family visitation privileges does not constitute cruel and unusual punishment. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1113 (9th Cir. 1986) (citing *Ramos v. Lamm*, 639 F.2d 559, 580 n. 26 (10th Cir.1980) ("weight of present authority clearly establishes that there is no constitutional right to contact visitation ... We agree with this view."), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980) ("convicted prisoners have no absolute constitutional right to visitation"); *Feeley v. Sampson*, 570 F.2d 364, 372–73 (1st Cir.1978) ("we can discover no constitutional guarantee that [contact visits] may take place."); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975) ("[prisoner] has no constitutional right to physical contact with his family."); *Smith v. Coughlin*, 748 F.2d 783, 788 (2d Cir.1984) (contact visits with persons other than priest, lawyer, and doctor could disrupt prison administration, create security risks, and allow smuggling of contraband; denial of contact visits did not violate prisoners' first amendment rights); *O'Bryan v. County of Saginaw*, 741 F.2d 283, 284–85 (6th Cir. 1984) (denial of contact visits for pretrial detainees did not violate constitution); and *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 758–60 (3d Cir.1979) (ban on contact visits does not violate due process rights of prisoners)).

Other courts have similarly held that a prisoner has no liberty interest in unfet-tered visitations. In *Torricellas v. Poole*, 954 F.Supp. 1405 (C.D.Cal.1997), the court held that the loss of one conjugal visit did not deprive the inmate of a liberty interest. *Id.* at 1414. In so ruling, the court noted that the prisoner had not been subjected to any discipline nor deprived of any good time credits. The court reasoned as follows:

It is clear that an inmate has no due process right under the Fourteenth Amendment to the Constitution to unrestricted visitations. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506; *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996); *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir.1994); *Toussaint v. McCarthy*, 801 F.2d 1080, 1113–14 (9th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). Any due process right plaintiff has must, thus, be a state-created liberty interest. Since *Sandin*, a state created liberty interest exists only when the loss is an 'atypical' sanction, which imposes 'significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin*, 115 S.Ct. at 2300.

In California, state regulations provide that prison officials can significantly restrict an inmate's visitations. *See* CAL. CODE REGS. tit. 15, §§ 3170–3174. Given the highly regulated and restricted nature of prison visitations, the loss of one conjugal visit can hardly be considered the type of 'atypical' and 'significant' restriction which implicates a protected liberty interest. *Sandin*, 115 S.Ct. at 2300; *see also Kentucky*, 490 U.S. at 464, 109 S.Ct. 1904 ("overall effect of the [visitation] regulation is not such that an inmate can reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions"). The plaintiff, thus, did not have a protected liberty interest in her canceled conjugal visit.

*Torricellas*, 954 F.Supp. at 1414.

The Second Circuit has held that a district court's dismissal of the prisoner's due

process claim "was proper because the [New York] state regulations permitting correctional facilities to allow conjugal visits to prisoners did not give [the plaintiff] a liberty interest in such visits." *Champion v. Artuz,* 76 F.3d 483 (2d Cir.1996) (citing *Hernandez v. Coughlin,* 18 F.3d 133, 136–38 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); and *Sandin, supra). See also Giano v. Goord,* 9 F.Supp.2d 235, 241 (W.D.N.Y.1998) (liberty interests were not implicated by suspension of family reunion program visits; "contact visits are a privilege for inmates, not a right" (citing *Block v. Rutherford,* 468 U.S. 576, 589, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984) ("the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility")); and *Wright v. Coughlin,* 31 F.Supp.2d 301, 316 (W.D.N.Y.1998) (claim asserting atypicality on the basis of denial of conjugal visits is "insufficient on its face, as inmates do not have a protected liberty interest in receiving conjugal visits").

Although this Court finds that plaintiff has not been deprived of a liberty interest by the state's classification system, the Court is nevertheless sympathetic to plaintiff's plight. Because plaintiff has never

been convicted of a sex offense, it seems unreasonable for the state prison officials to classify him as a sex offender and deny him family visits.[9] But federal courts are not authorized by law to second-guess the policies of prison administrators in a general sense. Rather, the limited question for this Court is whether plaintiff has a liberty interest in having physical contact with his family, such that under the Fourteenth Amendment he was entitled to due process of law before that privilege could be revoked. This Court is constrained to find that the threshold test articulated in *Sandin* precludes finding a liberty interest and bars the relief plaintiff seeks.

As in *Sandin,* the state's action here did not in any way affect the duration of plaintiff's state sentence. Additionally, by plaintiff's own admission,[10] the deprivation of family visits subjects him to conditions no different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion.

## B. *Sex Offender Classification*

The Ninth Circuit has stated that the "classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'

---

**9.** The Court notes that CAL.CODE REGS, tit. 15, § 3174 states that a "convicted" sex offender is not permitted family visitation, while at the same time, a "conviction" for a sex offense is not a prerequisite to an "R" suffix classification. *See* Department of Corrections Operations Manual ("DOM") section 62010.4.3.1, which states:

Inmates *arrested, detained or charged* with any of the listed offenses [see footnote 2, *supra* ], or the equivalent, shall be carefully evaluated for an "R" suffix at the receiving institution and presented to a classification committee within six months of reception. The committee shall consider the arrest reports and district attorney's comments related to each such arrest and document their determination on the CDC Form 128–G. (Emphasis added.)

Thus, it appears that even though plaintiff need not have been "convicted" of a sex

offense to have been appropriately classified as a "sex offender" with an "R" suffix [*see* DOM 62010.4.3.1], a "conviction" of a sex offense—*not a mere arrest, detainment or charge* —does appear to be a relevant factor in determining whether family visitation privileges should be denied under Title 15 CAL.CODE REGS. § 3174. It appears that prison officials failed to take plaintiff's lack of a "conviction" into account and simply denied family visitation on the sole basis of the "R" suffix, which does seem unjust.

**10.** Plaintiff states on page 4 of his Complaint: "Rosie B. Garcia denied plaintiff for his family visiting listed in administrative regulations, 15 C.C.R. § 3174(E) which deny family visits to approximately *fifty percent* of the inmates population of California's prisons." (Emphasis added.)

that the Supreme Court held created a protected liberty interest." *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (citing *Sandin*, 515 U.S. at 482, 115 S.Ct. 2293). *Neal* involved the classification of a prisoner as a sex offender *coupled with* mandatory participation in Hawaii's Sex Offender Treatment Program ("SOTP"), the successful completion of which was a precondition to *parole eligibility* (the latter reflecting a clear liberty interest because it affected the prisoner's release date). Although the *Neal* court acknowledged that the due process analysis set forth in *Thompson, supra*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) had likely been disapproved by the *Sandin* Court's new test, i.e., the court should determine whether there has been an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the *Neal* court seems to have applied a hybrid *Sandin–Vitek–Thompson* test.

First, relying upon *Sandin*, the *Neal* court stated that due to its stigmatizing effects, a sex offender classification "is precisely the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life that the Supreme Court held created a protected liberty interest.'" *Neal*, 131 F.3d at 829. Although this statement standing alone seems to indicate that a mere "sex offender" classification, with nothing more, creates a liberty interest, the court's discussion throughout the remainder of the opinion indicates that more of a deprivation must be present to effect a prisoner's liberty interests. The court reasoned that because Hawaii's "regulations render the inmate *completely ineligible for parole* if the [SOTP] is not satisfactorily completed, *the attachment of the 'sex offender' label to the targeted inmate has a practical and inevitable coercive effect on the inmate's conduct.*" *Id.* (emphasis added). The *Neal* court concluded that the "coercive component" of the SOTP was "functionally equivalent to the psychiatric treatment required by the statute at issue in *Vitek* that

followed inexorably from the inmate being labeled as mentally ill." *Id.* In *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Court found the prisoner plaintiff's liberty interest was affected by virtue of him being classified as mentally ill which mandated that he be transferred to a mental hospital for involuntary psychiatric treatment (mandatory behavior modification).

Turning first to the Supreme Court's pre-*Sandin* test, as articulated in *Thompson, supra*, the *Neal* court stated: "We will discuss this approach, however, because our conclusion is sound under this analysis as well." *Thompson* stated:

> We have also articulated a requirement, implicit in our earlier decisions, that the regulations contain "explicitly mandatory language," i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest.... In sum, the use of "explicitly mandatory language," in connection with the establishment of "specified substantive predicates" to limit discretion, forces a conclusion that the State has created a liberty interest.

*Neal*, 131 F.3d at 829.

The *Neal* court then reasoned:

> In this case, the substantive predicate is the labeling of the targeted inmate as a sex offender. Once that is done, it is mandatory [under Hawaii's Sex Offender Treatment Program ("SOTP") ] that the labeled inmate successfully complete the specified treatment program in order to become eligible for parole. There is no room for prison officials' discretion once an inmate has been labeled a sex offender.
>
> *The liberty interest implicated by the establishment of the SOTP is not merely the requirement that sex offenders complete the specified treatment program. **If that were all that was at stake, we could probably not say that***

*a liberty interest had been created, given the fact that prisons frequently maintain treatment and behavioral modification programs (such as anger management or alcohol abuse classes) that have long withstood legal challenge. The liberty interest at stake in this case is similar in form and scope to the interest at stake in **Vitek**; the stigmatizing consequences of the attachment of the "sex offender" label **coupled with** the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections.* Inmates like Neal and Martinez are entitled to the benefits of these procedures before being labeled as sex offenders and subjected to the requirements of the SOTP.

*Id.* at 830.

 Based on statements by the courts in *Vitek* and *Neal,* the liberty at interest at stake must be more than a mere "sex offender" classification or a "mental illness" classification. Rather, that classification must also be "coupled with" some **mandatory, coercive treatment** which affects a liberty interest, such as parole release as in *Neal,* or a physical transfer to a mental hospital for involuntary confinement as in *Vitek. See also Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)

(involuntary administration of psychotropic drugs). In this case, however, the sex offender classification is coupled with the denial of family visitation "privileges," the latter not rising to a liberty interest, as discussed *supra* in Part IV.A. Accordingly, because plaintiff has not been denied a liberty interest, Count 2 of the complaint alleging violation of plaintiff's Fourteenth Amendment right to procedural due process is **DISMISSED** with prejudice and without leave to amend.[11]

Because the Court has dismissed all claims as discussed above, the Court need not address defendants' other arguments that plaintiff has not demonstrated any injury and that defendants are entitled to qualified immunity.

### CONCLUSION AND ORDER

After a thorough review of the record in this matter, and based on the forgoing analysis, **IT IS HEREBY ORDERED THAT:**

1. Count 1 of plaintiff's complaint alleging violation of his Eighth Amendment right to be free of cruel and unusual punishment is **DISMISSED** without prejudice for failure to exhaust administrative remedies. Plaintiff is granted *60 days leave to amend* his complaint from the date of this Order. The amended complaint must be complete in itself and must demonstrate

---

**11.** Plaintiff has also alleged in conclusory fashion numerous other sub-claims, none of which are cognizant constitutional claims in the context of the facts alleged, for example, violation of: "separation of powers" doctrine, "ex post facto" laws, right to "equal protection," the "single subject" rule, and right to privacy. Compl. at 5–6. Under 28 U.S.C. § 1915(e)(2), the Court *shall* dismiss a claim at any time if the court determines that a claim is frivolous or fails to state a claim on which relief may be granted. The Court finds that these "theories" fail to state a claim upon which relief can be granted; accordingly, they are **DISMISSED** *with prejudice* under 28 U.S.C. § 1915(e)(2). With respect to plaintiff's pendant state law claim for slander, the Court declines to exercise supplemental jurisdiction over this claim because: (1) plaintiff's

federal claims are dismissed, and (2) plaintiff has not alleged that he complied with the claim-filing prerequisites set forth in the California Tort Claims Act, CAL. GOV'T CODE §§ 900 et seq. *See* 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Ellis v. City of San Diego,176 F.3d 1183,* 1186, 1999 U.S.App. LEXIS 9067, *3 (9th Cir. May 14, 1999). Accordingly, the slander claim is **DISMISSED** *without prejudice and with leave to amend.* Should plaintiff *successfully* amend his federal constitutional claims under 42 U.S.C. § 1983, as more fully discussed above, and allege upon amendment that he has properly exhausted his slander claim, then the Court will reconsider exercising supplemental jurisdiction over the slander claim.

compliance with the exhaustion precondition to filing a lawsuit. Should plaintiff fail to satisfactorily amend his complaint to cure this deficiency within 60 days, the complaint shall be dismissed either upon motion by defendants or *sua sponte* by the Court with prejudice and without further leave to amend.

2. Count 2 of plaintiff's complaint alleging violation of his Fourteenth Amendment right to procedural due process is *DISMISSED* with prejudice and without leave to amend for failure to state a claim under 42 U.S.C. § 1983.

3. Plaintiff's conclusory claims for relief against defendants for violation of: "separation of powers" doctrine, "ex post facto" laws, right to "equal protection," the "single subject" rule, and right to privacy are *DISMISSED* with prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2).

4. Given that the Court has dismissed all claims over which it has original jurisdiction, plaintiff's pendant state law claim for slander is *DISMISSED* without prejudice under 28 U.S.C. § 1367(c)(3); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). However, should plaintiff *successfully* amend his federal constitutional claim for violation of the Eighth Amendment under 42 U.S.C. § 1983, as delineated in this Order, and should he properly exhausted his slander claim, then the Court will reconsider exercising supplemental jurisdiction over this pendant state law claim.

5. On May 13, 1999, defendants Nichols, Ruiz, and Melching filed a "Motion to Dismiss Complaint" which identical to the subject motion to dismiss. Because the facts, issues, and arguments raised by these defendants are identical to the issues addressed in this Order, the Motion to Dismiss [Doc. No. 16] filed by defendants Nichols, Ruiz, and Melching is *GRANTED* to the same extent as set forth in Paragraphs 1–4 of this Order. Accordingly,

the June 30, 1999 hearing date on that motion is *VACATED*.

**IT IS SO ORDERED.**