Nathaniel JENKINS, Plaintiff,

v.

Raymond TOOMBS et al., Defendants.

No. 1:98 CV 324.

United States District Court,
W.D. Michigan,
Southern Division.

Jan. 15, 1999.

Nathaniel Jenkins, Ionia, MI, pro se.

## *OPINION*

ENSLEN, Chief Judge.

This matter is before the Court on Plaintiff Nathaniel Jenkins' Objections to the Magistrate Judge's Report and Recommendation. The Report recommends dismissing Plaintiff's 42 U.S.C. § 1983 complaint in its entirety because Jenkins has failed to exhaust his administrative remedies for a portion of the claims made in the complaint. Jenkins objects to this Recommendation on the grounds that he has exhausted his administrative remedies and that it would be impossible for him to refile his action because his legal materials have been stolen. After reviewing the Report and Recommendation, the Court finds that dismissal of the entire complaint is not necessary. Rather, those claims which are unexhausted should be dismissed without prejudice and the Magistrate Judge should consider the remaining claims on their merits.

## FACTS

Jenkins is a state prisoner at the Ionia Maximum Facility ("IMAX"). On April 2, 1998, Jenkins filed a pro se complaint under 42 U.S.C. § 1983, alleging that various IMAX employees had violated his federal constitutional rights. In particular, he alleged that Defendants failed to provide him, as a Jewish prisoner, the same access to religious materials as provided to Christian or Muslim prisoners; improperly denied him a Kosher therapeutic six-feeding reflux diet, as prescribed by his doctor for treatment of chronic gastric erosive flux disease; provided non-Kosher foods and inadequate portions in the Kosher diet plan; allowed his Kosher meals to be served cold and to be unsealed prior to serving, exposing his food to a variety of bacteria; and discriminated against black prisoners in determining which prisoners were eligible for Kosher meals.

Magistrate Judge Brenneman reviewed the complaint and recommended that it be dismissed, because Jenkins had not demonstrated that he had exhausted his administrative remedies for any of the claims made. Defendant objected to that recommendation and submitted copies of grievances showing that a portion of his claims had been fully exhausted. In an Opinion and Order, dated September 21, 1998, the Court ordered that the unexhausted claims be dismissed and that the remaining claims be considered on their merits. Jenkins subsequently sought leave to amend his complaint, which was granted. In his amended complaint, Jenkins asserted a variety of claims against additional defendants, but failed to demonstrate that he had exhausted any of the additional claims. Magistrate Judge Brenneman urges this Court to adopt a "total exhaustion" requirement and recommends that Jenkins' complaint be dismissed in its entirety, because the complaint includes both exhausted and unexhausted claims. Jenkins objects to this Recommendation.

## DISCUSSION

The Court must review de novo those sections of the Magistrate Judge's Report and Recommendation to which objections are made. W.D. Mich. L.R. 13(b). In reviewing

objections, the Court may rely on the record created before the Magistrate Judge or may consider new evidence submitted by the parties. *Id.* In this case, however, Jenkins has not submitted additional materials demonstrating exhaustion of any of the newly added claims.

■ The Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104–134, made exhaustion of administrative remedies mandatory in prisoner civil rights actions challenging prison conditions. Prior to 1996, when the PLRA was passed, a court could opt to continue a case for 180 days to allow a prisoner to exhaust his administrative remedies or excuse a failure to exhaust if the administrative remedies available did not meet minimum standards of fairness and effectiveness. 42 U.S.C. § 1997e(a) (1994). The PLRA removed this flexibility by amending the statute to read that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (Supp. 1998). Under the revised law, a prisoner's claims must be dismissed without prejudice, if he fails to exhaust his administrative remedies. *Wright v. Morris,* 111 F.3d 414, 417 (6th Cir.1997).

■ In his Report and Recommendation, the Magistrate Judge urges this Court to adopt a total exhaustion rule. Under such a rule, a prisoner civil rights action which included both exhausted and unexhausted claims would be dismissed in its entirety without prejudice, rather than simply dismissing without prejudice the unexhausted claims. Although both the Magistrate Judge and this Court could find several cases which seem to apply a total exhaustion rule to prisoner civil rights actions under 42 U.S.C. § 1983, none of these cases are published or create binding precedent. *See e.g., Keenan v. Twommey,* No. 1:97–CV–549 (W.D.Mich. Sept. 4, 1998); *Sanchez v. O.R. Agency for Santa Clara County,* 1998 WL 283561 (N.D.Cal. May 27, 1998); *Abenth v. Palmer,* 1997 WL 255332 (N.D.Cal. April 28, 1997); *Estrada v. Gomez,* 1997 WL 220313 (N.D.Cal. April 22, 1997); *Eakins v. Stainer,* 1997 WL 122866 (N.D.Cal. March 5, 1997).

Other courts have applied the exhaustion requirement claim by claim, although none of these cases explicitly reject the total exhaustion rule. *See, e.g., Warburton v. Underwood,* 2 F.Supp.2d 306 (W.D.N.Y.1998); *Salmons v. Warden, Stateville Correctional Center,* 1998 WL 770496 (N.D.Ill. Oct.16, 1998); *Allen v. Sanders,* 1998 WL 318841 (N.D.Tex. June 4, 1998). Thus, the applicability of a total exhaustion rule in the context of prisoner civil rights litigation is a question of first impression.

The Magistrate Judge provides three arguments in support of a total exhaustion rule. First, he relies on the plain language of the PLRA. Second, he argues that this interpretation is necessary to give the PLRA a "real and substantial effect." Third, he asserts that the total exhaustion requirement is needed to carry out legislative intent and the policy underlying the PLRA. The Court is unpersuaded by these arguments.

First, the statutory language does not compel the imposition of a total exhaustion requirement. As the Magistrate Judge points out, the term "action" must be interpreted to mean a complaint or law suit as a whole, rather than a specific claim within the lawsuit. *Hudson v. Reno,* 130 F.3d 1193, 1200 (6th Cir.1997). However, a court can prevent a plaintiff from bringing an action before his administrative remedies are exhausted in two ways: by dismissing the complaint altogether or by limiting the complaint to exhausted claims. The phrase "no action shall be brought" does not compel adoption of either interpretation. In fact, the Supreme Court previously found that similar language applicable to habeas actions did not, in and of itself, impose a total exhaustion requirement. *See Rose v. Lundy,* 455 U.S. 509, 516–17, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

In *Rose v. Lundy,* the Supreme Court was asked to decide how "mixed petitions," that is, habeas petitions containing both exhausted and unexhausted claims, should be treated. The relevant statute provided that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the appli-

cant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

28 U.S.C. § 2254. The Supreme Court found that this statute, despite its affirmative statement that no application could be granted unless all available remedies were exhausted, did "not directly address the problem of mixed petitions." *Rose,* 455 U.S. at 516, 102 S.Ct. 1198. The Court then relied on the policy behind requiring exhaustion in habeas actions to determine that a "total exhaustion" rule should be applied. *Id.* at 517, 102 S.Ct. 1198.

Further, in interpreting statutes, courts must give "similar language within the same statutory section ... a consistent meaning." *National Credit Union Administration v. First National Bank and Trust Co.,* 522 U.S. 479, 118 S.Ct. 927, 930, 140 L.Ed.2d 1 (1998). Other uses of the term "action" within the PLRA do not support a total exhaustion requirement. For example, a court must dismiss "any action ... [that] is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(1) (Supp.1998). Adopting the total exhaustion requirement and giving a consistent meaning to the term "action" in both sections, the court would be required to dismiss a prisoner's entire complaint if any of the claims therein were found to be frivolous or insufficient to justify relief. Congress does not appear to have intended this result, since it specifically provides for dismissal of unexhausted individual claims for frivolousness, failure to state a claim or failure to seek relief other than monetary damages. 42 U.S.C. § 1997e(c)(2) (Supp. 1998). Further, courts have applied 42 U.S.C. § 1997e(c)(1) to dismiss specific claims, rather than entire complaints. *See, e.g., McGore v. Wrigglesworth,* 114 F.3d 601, 608 (6th Cir.1997); *Dean v. Brandon,* 162 F.3d 1161 (6th Cir.1998); *Stamps v. McWherter,* 888 F.Supp. 71, 72 n. 2 (W.D.Tenn.1995).

Second, a total exhaustion requirement is not necessary to give a "real and substantial effect" to the PLRA. The "real and substantial effect" of this new language is to make exhaustion mandatory and preclude courts from continuing cases to allow exhaustion or from excusing exhaustion altogether. *Compare* 42 U.S.C. § 1997e(a) (1984) *with* 42 U.S.C. § 1997e(a) (Supp.1998).

Third, neither the legislative history of the PLRA nor the policy behind adopting an exhaustion requirement in this context mandates imposition of a total exhaustion rule. The Court could find no indication in the meager legislative history of the PLRA that Congress intended to impose a "total exhaustion" requirement in prisoner litigation challenging conditions of confinement. *See* 1996 U.S.C.C.A.N 961–5 to 961–10; H.R. Conf. Rep. No. 537 (1996); H.R. Conf. Rep. No. 378 (1995). Further, the policies behind enactment of the mandatory exhaustion provision do not favor a total exhaustion rule over a rule which simply dismisses those claims which are unexhausted.

Prior to enacting the PLRA, Congress imposed a limited exhaustion requirement on prisoner civil rights litigation brought under 42 U.S.C. § 1983. *Patsy v. Board of Regents,* 457 U.S. 496, 508–09, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). This requirement was intended "to relieve the burden on the federal courts by diverting certain prisoner petitions back through state and local institutions, and also to encourage the States to develop appropriate grievance procedures." *Id.* at 509, 102 S.Ct. 2557. By amending the law to make exhaustion mandatory and applicable to a broader range of actions, Congress intended to bring further relief to an overburdened federal court system. *Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir.1998). In addition, the exhaustion requirement may be intended to allow state and local institutions to correct their own mistakes and to prevent prisoners from simply ignoring available administrative remedies. *Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884 (S.D.N.Y.1998).

While total exhaustion would reduce the number of cases that a court had to consider in-depth prior to dismissal, it is likely to simply increase the number of prisoner civil rights actions filed. Because of the limited time frame for pursuing administrative rem-

edies in the Michigan prison system, a prisoner may not be able to raise or resolve unexhausted claims within state and local institutions. Further, courts have not established a system by which prisoner civil rights claims which are incapable of exhaustion may be reviewed. *Wright v. Morris,* 111 F.3d 414, 417 n. 3 (6th Cir.1997). Given these procedural barriers, prisoners are likely to simply amend their complaints to eliminate the unexhausted claims and refile. In that case, courts would be faced with exactly the same claims that could have been resolved at the outset. It is unclear how a total exhaustion requirement would promote development of adequate grievance procedures in a way that a simple claim by claim exhaustion requirement would not. Further, any rule which prevents a court from hearing an unexhausted claim would allow state and local institutions to correct their own mistakes prior to federal court intervention and would force prisoners to pursue available administrative remedies.

The Magistrate Judge argues that the same policy reasons that favor a total exhaustion requirement in habeas cases apply to prisoner civil rights actions. However, the policies behind the exhaustion in habeas cases and prisoner civil rights actions are different. While exhaustion in prisoner civil rights actions is meant primarily as a docket management strategy, exhaustion in habeas cases is intended to promote comity by "protect[ing] the state courts' role in the enforcement of federal law and prevent[ing] disruption of state judicial proceedings," *Rose,* 455 U.S. at 518, 102 S.Ct. 1198, to ensure factual development through evidentiary hearings within the state courts, and to avoid the problem of exhausted and unexhausted claims based on intermingled facts and the resulting temptation to resolve unexhausted claims which are tightly linked to exhausted claims, *id.* at 518–19, 102 S.Ct. 1198.

Even if these policies applied to prisoner civil rights actions, they would not favor adoption of a total exhaustion requirement. First, there is no comity issue involved in prisoner civil rights actions, since prisoners are not required to press their claims in state courts and prison administrators generally limit their review to determining whether prison policy has been violated. Second, the administrative remedies developed by prisons may not involve evidentiary hearings of the type that are held in state courts. Third, resolving all of a prisoner's civil rights claims together may be less important, since the claims raised in a single complaint are less likely to deal with interrelated or intermingled factual issues than the claims raised in habeas petitions. For example, in this case, Plaintiff's complaints range from allegations of general discrimination against black Jewish prisoners to improper handling of his food. In addition, where a prisoner's civil rights claims are closely related, a prisoner who failed to exhaust all of his claims before filing suit would bear the risk that some claims would be dismissed and that he might be barred from seeking redress in subsequent litigation on res judicata grounds.

A total exhaustion rule might also be unduly punitive in this context. If a prisoner's civil action is dismissed for any reason, he is required to pay a second fee to refile. *McGore,* 114 F.3d at 605. Given the limitations on exhausting or obtaining review of unexhausted claims, prisoners would likely be limited to amending their complaints to eliminate unexhausted claims and the total exhaustion requirement would amount to nothing more than a monetary penalty against the prisoner.

## CONCLUSION

For the foregoing reasons, the Court finds that Section 1997e(a) does not impose a total exhaustion requirement on prisoner civil rights litigation. Accordingly, Jenkins' Objections are granted and the Magistrate Judge's Report and Recommendation is rejected. The court remands this case to the Magistrate Judge for dismissal of those claims which Jenkins has failed to exhaust and for further proceedings on the merits of those claims which Jenkins has exhausted.