Peter Joe RIVERA, Plaintiff,

v.

Christine Todd WHITMAN, Jack Terhune, Donald E. Lewis, M. Schilling, Sgt. Kershaw, S.C.O. Perez, Stanley Nunn, Sgt. Warren, S.C.O. Sharp, S.C.O. McConnelly, T. Lopez, James F. Barbo, S.C.O. Schwenk, S.C.O. Wasick, Defendants.

No. CIV.A.99–544(JEI).

United States District Court, D. New Jersey.

Aug. 17, 2001.

Peter Joe Rivera, Trenton, NJ, Plaintiff Pro Se.

John J. Farmer, Jr., Attorney General of New Jersey by David M. Ragonese, Trenton, NJ, for Defendants.

**OPINION**

IRENAS, District Judge:

Presently before the Court is Defendants' Motion for Summary Judgment of Plaintiff Peter Joe Rivera's § 1983 action. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343. For the reasons set forth below, Plaintiffs' suit is dismissed without prejudice.

**I. BACKGROUND**

Peter Joe Rivera ("Plaintiff") is an inmate presently incarcerated at Northern State Prison in Newark, New Jersey. He brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Plaintiff named seventeen defendants in this action, including Christine Todd Whitman, then-Governor of New Jersey; Jack Terhune, Commissioner of

the New Jersey Department of Corrections; Donald E. Lewis, Administrator of Riverfront State Prison ("RSP"); W. Stanley Nunn, Administrator of Southwoods State Prison ("Southwoods"); James F. Barbo, Administrator of Northern State Prison ("NSP"); Correctional Medical Services; three RSP corrections officers, Lieutenant M. Schillig, Sergeant Kershaw and Officer Perez; two Southwoods corrections officers, Sergeant Warren and Officer Sharp; three NSP corrections officers, Lieutenant T. Lopez and Officers Schwenk and Wasik; S. Larkins, a disciplinary hearing officer at NSP; and Chief Hearing Officer McNeil of the New Jersey Department of Corrections. (Compl.5–5k). The claims against defendants Whitman, Larkins, McNeil, and Correctional Medical Services, Inc., have already been dismissed. (*See* Orders 3/25/99, 6/22/99, 2/8/00).

Plaintiff asserts that on May 27, 1998, while he was incarcerated at RSP, he was assaulted by defendants Perez and Kershaw, while Lieutenant Schillig witnessed the incident but refused to intervene. (Compl.6(c)-(e)). Defendants counter that, in preparing to escort Plaintiff to TCC, they merely used necessary force after Plaintiff resisted being handcuffed. (Defs.' Mot. Summ. J. Ex B. at ¶ 3). Plaintiff alleges that he sustained cuts and bruises all over his body during the assault. (Compl. at 6(c)). He claims that once he was in the detention unit, the corrections officers there called the medical staff to care for his injuries. (*Id.* at 6(f)). Rivera maintains that, after thirty minutes, a nurse arrived and interviewed him through the detention cell's soundproof door. (*Id.*). He states that the nurse would not treat his injuries, but told him to wait until he was released from the detention area. (*Id.*). Plaintiff alleges that the medical staff knew he had serious injuries but refused to treat him in retaliation for a law-

suit plaintiff had previously filed against an RSP physician. (*Id.* at 6(g)). Defendants maintain that Plaintiff had only minor superficial abrasions. (Defs.' Mot. Summ. J. Ex. C at D001).

Plaintiff was transferred to Southwoods in June of 1998. (Compl.6(i)). He claims that many items of his personal property were lost during the transfer and that property he sent to his family never arrived. (*Id.* at 6(j)). Plaintiff also complains about the conditions of his confinement after his transfer. (*Id.* at 6(i) 6(j)). Defendants claim this complaint was resolved by a member of the warden's staff. (Defs.' Mot. Summ. J. Ex. D at ¶ 2). Plaintiff next asserts that, on July 31, 1998, Defendants Sergeant Warren and Officer Sharp along with a group of other officers beat him as he was leaving the dining hall. (Compl.6(k)). Defendants counter that they confronted Plaintiff after he was observed to have bulges in his front pockets, and restrained him after he assaulted Warren, one of the confronting officers. (Defs.' Mot. Summ. J. Ex. E at D004–D007). Plaintiff further alleges that medical personnel again refused to provide treatment following the incident. (Compl.6(h)). Again, Defendants claim he suffered only minor abrasions. (Defs.' Mot. Summ. J. Ex. C. at D002).

Plaintiff was transferred to NSP on or about August 2, 1998. (Compl.6(m)-(n)). He claims that the transporting officer, McConnelly, terrorized him throughout the trip to NSP. (*Id.* at 6(m)). He also alleges that he was denied a meal when he arrived and was denied a sanitary cell as well as clothes and cleaning supplies. (*Id.* at 6(n)-(o)). Plaintiff further maintains that he was abused by Wasik and Schwenk once they learned that he had assaulted Warren at Southwoods. (*Id.* at 6(p)-(v)). Plaintiff also included various complaints about the

law library services at NSP. (*Id.* at 6(r)-(s)).

Plaintiff contends that, during his disciplinary hearing on August 3, 1998, vis a vis his assault on Warren, he was denied his right to cross-examine witnesses and that the hearing officer overlooked evidence. (Compl.6(x)-(y)). Plaintiff was found guilty on the disciplinary charges, a decision upheld on appeal. (Defs.' Mot. Summ. J. at 8).

On March 25, 1999, Plaintiff filed the instant action pursuant to § 1983 alleging violations of his constitutional rights under the First, Eighth, and Fourteenth Amendments. On June 29, 2001, Defendants filed this Motion for Summary Judgment.

## II.  STANDARD OF REVIEW

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.  DISCUSSION

### A.  § 1997e(a)

42 U.S.C. § 1997e(a) provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

This past term, the Supreme Court held that § 1997e(a) requires exhaustion even if available administrative processes cannot grant the desired remedy. *Booth v. Churner*, 531 U.S. 956, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). In the instant matter, the issue is whether § 1997e(a) compels a rule of "total exhaustion"—in other words, whether a district court must dismiss a prisoner's § 1983 action if some but not all of the claims are unexhausted or if it may dismiss just those claims which are unexhausted.

The issue is unsettled. The district courts that have addressed the issue are split. *Compare Julian–Bey v. Crowley*, No. 2:99–cv–107, 2000 U.S. Dist. LEXIS 14071 (W.D.Mich. Sept. 21, 2000) (holding that plain language and policy interests required "total exhaustion" rule); *Thorp v. Kepoo*, 100 F.Supp.2d 1258 (D.Haw.2000) (same); *Keenan v. Twommey*, No. 1:97–cv–549, 1999 U.S. Dist. LEXIS 11829 (W.D.Mich. July 29, 1999) (same); *Keenan v. Twommey*, No. 1:97–cv–549 (W.D.Mich. Sept. 4, 1998) (same); *Sanchez v. O.R. Agency for Santa Clara Cty.*, No. C 98–830 SI(PR), 1998 WL 283561 (N.D.Cal. May 27, 1998) (summarily dismissing without prejudice pursuant to "total exhaustion" rule); *Abenth v. Palmer*, No. C 96–3938 MHP, 1997 WL 255332 (N.D.Cal. Apr.28, 1997) (same); *Estrada v. Gomez*, No. C 97–297 SI PR, 1997 WL 220313 (N.D.Cal. Apr.22, 1997) (same); *Eakins v. Stainer*, No. C 97–694 SI (pr), 1997 WL 122866 (N.D.Cal. Mar.5, 1997) (same), *with Johnson v. True*, 125 F.Supp.2d 186 (W.D.Va. 2000) (holding that "total exhaustion" rule

contradicts congressional intent); *Cooper v. Garcia*, 55 F.Supp.2d 1090 (S.D.Cal. 1999) (same); *Jenkins v. Toombs*, 32 F.Supp.2d 955 (W.D.Mich.1999) (same).

While two circuit courts have ruled on the issue, and come to contrary conclusions, neither has analyzed the issue in any depth. *Compare Graves v. Norris*, 218 F.3d 884, 886 (8th Cir.2000) (holding that "[w]hen multiple prison condition claims have been joined ... the plain language of § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims"), *with Riley v. Richards*, 210 F.3d 372, 2000 WL 332013 (6th Cir.2000) (per curiam) ("If a complaint contains exhausted and unexhausted, the district court may address the merits of the exhausted claims and dismiss only those that are unexhausted." (citing *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999))).[1] The Third Circuit has yet to address the issue, and the only district court in the circuit to deal with it did so without analysis. *Blackwell v. Vaughn*, No. 97–CV–3467, 2001 WL 872777 (E.D.Pa. July 3, 2001) (Brody, J.) (reaching merits of exhausted claims while dismissing unexhausted claims under 1997e(a)).

### 1. Plain Meaning of the Statutory Language

█ A "familiar canon of statutory construction is that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly ex-pressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Moreover, "words will be interpreted as taking their ordinary, contemporary, common meaning," *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), such that "[i]n construing a federal statute it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses the legislative purpose." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985). Therefore, if the language of the statute is unambiguous, the plain meaning of the text must be enforced. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The language of § 1997e(a) was amended in 1996 by the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1321, to make exhaustion mandatory rather than discretionary. By using the term "action" rather than "claim," Congress made clear its intent that prisoners be required to exhaust all claims before the action was allowed to proceed. Indeed, Congress defined the term "action with regard to prison conditions" in another provision of the PLRA as "any civil proceeding ... with respect to the conditions of confinement or the effects of actions by government officials on the lives

---

1. While *Riley* as well as a number of subsequent Sixth Circuit decisions cite *Hartsfield* for the stated proposition, the panel in *Hartsfield* did not address the "total exhaustion" issue. While the court did dismiss the unexhausted claims and reach the merits of the exhausted claim, its failure to address the "total exhaustion" issue suggests that the issue was not squarely presented nor considered by the court. Indeed, this issue was not among those on appeal. *Id.* at 308.

Incidentally, several months after the *Hartsfield* and *Riley* decisions, the Sixth Circuit affirmed *Keenan v. Twommey*, 1999 U.S. Dist. LEXIS 11829, in which the district court embraced the "total exhaustion" rule, although the affirmance focussed on the fact that the plaintiff in *Keenan* had not demonstrated that he had exhausted all of his claims. *Keenan v. Twommey*, No, 99–2030, 2000 WL 1175621, 2000 U.S.App. LEXIS 21200 (6th Cir. Aug. 10, 2000).

of persons confined in prison...." 18 U.S.C. § 3626(g)(2); *see Booth v. Churner,* 206 F.3d 289, 294 (3d Cir.2000) (holding that, because § 1997e(a) and § 3626(g)(2) are substantially related, "it follows from the canon of interpretation invoked in [*Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990) ] that the identical terms used in the two sections should be read as conveying the same meaning"), *aff'd,* 531 U.S. 956, 121 S.Ct. 1819 (2001). The plain meaning of "action" and "civil proceeding" are patently distinct from "claim."

Furthermore, comparison with other provisions of 1997e makes this distinction even clearer. Section 1997e(c)(1) provides that a district court shall dismiss any "action" which is frivolous or fails to state a claim. In contrast, § 1997e(c)(2) provides that the district court may dismiss a "claim" which is frivolous or fails to state a claim even if that "claim" has not been exhausted. Congress's use of the different terms indicates that it intended different meanings.

Some courts contend that the terms "action" and "claim" must be construed as interchangeable because, otherwise, § 1997e(c)(1) and § 1997e(c)(2) would not be reconcilable. *Jenkins,* 32 F. Supp .2d at 958. This argument is simply erroneous. In fact, the purpose of § 1997e(c)(2) is to reconcile § 1997e(a) with § 1997e(c)(1). Congress recognized that mandating dismissal *without* prejudice for failure to exhaust might prevent a court from dismissing *with* prejudice for frivolousness. Section 1997e(c)(2) solves this problem by allowing a court to dismiss an unexhausted claim as frivolous, thus preventing an unexhausted claim from "holding up" the dismissal of a frivolous action comprising otherwise exhausted claims.

Yet another provision of the PLRA provides further support that Congress understood the semantic distinction. 28 U.S.C. § 1915A(b)(1) mandates that a court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint if the complaint is frivolous, malicious, or fails to state a claim...." Again, the fact that this provision was written contemporaneously with 1997e(a) evinces Congress's awareness of alternate language and supports the conclusion that Congress meant "action" when it said "action." Section 1915A is also valuable in that it shows that those courts that dismiss individual claims, rather than whole actions, as frivolous have authority to do so under § 1915A rather than 1997e(c)(1).

Because the plain language compels a "total exhaustion" rule, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n,* 447 U.S. at 108, 100 S.Ct. 2051.

### 2. Legislative History and Policy Considerations

While there is no legislative history specifically on point, the general intent of the PLRA and other important policy considerations support a "total exhaustion" rule. As the Third Circuit stated in *Nyhuis v. Reno,* 204 F.3d 65 (3d Cir.2000), "Congress amended 1997e(a) largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts." *Id.* at 73 (quoting *Alexander v. Hawk,* 159 F.3d 1321, 1326 n. 11 (6th Cir.1998) (citing 141 Cong. Rec. H14078-02, H14105 (daily ed. Dec. 6, 1995))). "Congress desired 'to wrest control of our prisons from the lawyers and the inmates and return that control to competent administrators appointed to look out for society's interests as well as the legitimate needs of prisoners.'" *Nyhuis,* 204 F.3d at 73–74 (quoting *Alexander,* 159 F.3d at 1326 n. 11 (quoting 141

Cong. Rec. S14408–01, S14418 (daily ed. Sept. 27, 1995))).

First, a "total exhaustion" rule furthers the PLRA's goals of reducing frivolous prison litigation and promoting judicial economy. As the Third Circuit stated in *Nyhuis,* "Inmate-plaintiffs often file claims which are untidy, repetitious, and redolent of legal language. The very nature of such complaints necessitates that courts expend significant and scarce judicial resources to review and refine the nature of the legal claims presented." 204 F.3d at 74. "The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures." *Id.* at 76 (citing *Wyatt v. Leonard,* 193 F.3d 876, 878–79 (6th Cir.1999)). Thus, by requiring that all claims be exhausted before the federal court considers them, § 1997e(a) ensures that prisoner actions are more focused and that some frivolous claims are screened out. Additionally, the provision frees the federal court from the potentially difficult and time-consuming process of determining precisely which of the often-entangled claims have been exhausted and which have not. *Keenan,* 1999 U.S. Dist. LEXIS 11829, at *8.

Furthermore, the "total exhaustion" rule deters the filing of unexhausted or frivolous claims. First, as Congress intended, the threat of dismissal of unexhausted or frivolous claims will encourage prisoners to pursue all available administrative remedies. *See Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir.1998) ("[D]ismissal may serve as a deterrent to premature filing by [prisoners], thus serving the Congressional purpose of providing relief from frivolous prisoner litigation."). Second, far from being unduly punitive, *see Jenkins,* 32 F.Supp.2d at 959, requiring a prisoner to pay a second filing fee provides additional deterrence against the filing of unexhausted or frivolous claims. *Keenan,* 1999 U.S. Dist. LEXIS 11829, at *9.

The "total exhaustion" rule also promotes judicial economy by effectively reducing the number of cases that federal courts must resolve. By dismissing actions which include unexhausted claims, § 1997e(a) gives the state administrative bodies another chance to remedy the prisoner's grievances. The court in *Jenkins* counters, however, that a "total exhaustion" rule would actually increase the number of suits filed because prisoners would simply drop their unexhausted claims and refile their exhausted claims. 32 F.Supp.2d at 958–59. This conclusion, while technically true, misses an important point. A suit which is dismissed without prejudice and refiled is, for all intents and purposes, one suit. The additional time required by the court to handle it is marginally greater than if it had not been dismissed and refiled.

In contrast, what would markedly increase the court's work is if a prisoner's claims proceeded in piecemeal fashion, with the exhausted claims proceeding first, then the unexhausted exhausted claims proceeding later after they have been exhausted. It is precisely this type of piecemeal litigation that § 1997e(a) was intended to curb. *Thorp,* 100 F.Supp.2d at 1263 ("In requiring the exhaustion of prisoner grievances through section 1997e(a), Congress most certainly did not intend the inefficient result of permitting actions to proceed in part while other claims remained to be tried only after they have been exhausted.").

Additionally, the "total exhaustion" rule promotes comity. As the Supreme Court stated in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), albeit in the habeas corpus context:

Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems. Moreover, because most potential litigation involving state prisoners arises on a day-to-day basis, it is most efficiently and properly handled by the state administrative bodies and state courts, which are, for the most part, familiar with the grievances of state prisoners and in a better physical and practical position to deal with those grievances.

*Id.* at 492, 93 S.Ct. 1827. While some courts reject the analogy to the habeas corpus context, *see Jenkins,* 32 F.Supp.2d at 959 ("the policies behind the exhaustion in habeas cases and prisoner civil rights actions are different"), this criticism is misguided. Not only do § 1983 actions implicate many of the same comity interests as habeas petitions, as described in *Preiser,* but § 1997e(a) also irons out the juridical wrinkle that would result from requiring full exhaustion in habeas corpus cases involving life and liberty but not in § 1983 cases. *Keenan,* 1999 U.S. Dist. LEXIS 11829, at *11.

And as "[t]he PLRA was plainly intended, at least in part, to 'reduce the intervention of federal courts into the management of the nation's prison systems,'" *Booth,* 206 F.3d at 295 (quoting *Freeman v. Francis,* 196 F.3d 641, 644 (6th Cir.1999)), § 1997e(a) promotes this aim by preventing federal courts from hearing prisoner actions until the state administrative bodies have had a full opportunity to address, and potentially remedy, the grievances. As discussed, this has additional benefits for the federal courts in terms of more focused complaints and more developed evidentiary records.

For the reasons stated above, the Court finds that the plain language of the § 1997e(a), as well as the legislative intent and policy interests behind it, compels a "total exhaustion" rule.

### B. Plaintiff Has Not Exhausted All of His Claims

■ Defendants contend that Plaintiff has failed to exhaust his claims regarding his alleged abuse by Schwenk and Wasik and the conditions of his confinement at NSP. NSP utilizes an administrative procedure whereby Plaintiff must submit his grievances to the Administrator's Office via an Administrative Remedy Form, which are available from the housing unit officer. (Defs.' Mot. Summ. J. at 33). Once received by the Administrator's Office, an appropriate supervisor has ten days to respond to the prisoner's grievance. (*Id.*). The Administrator of NSP then reviews the proposed remedy, which, upon the Administrator's approval, is conveyed to the prisoner. (*Id.*). At that point, the prisoner's claim is exhausted. (*Id.*).

In this case, James F. Barbo, the Administrator of NSP at the time, submitted a sworn affidavit stating that the only correspondence he received from Plaintiff involved allegations regarding damage to his property, allegations which, upon investigation, were found to be unsubstantiated. (Defs.' Mot. Summ. J. Ex. F). It does not appear from the record that Plaintiff pursued the administrative remedies available to him with regard to the conditions of his confinement or the alleged abuse. As a result, he has not exhausted these claims.

Because Plaintiff's Complaint includes unexhausted claims, § 1997e(a) requires

this court to dismiss the entire action without prejudice.[2]

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's action is dismissed without prejudice for failure to exhaust.  The Court will enter an appropriate order.

---

**2.** Because § 1997e(a) requires dismissal without prejudice if the action includes any unexhausted claims, it is unnecessary for this

Court to determine whether Plaintiff's other claims were exhausted.