Michael L. BLACKMON, Plaintiff,

v.

Jackie CRAWFORD, Theodore D'Amico, Douglas Little, Defendants.

No. CV–N–01–0111–ECR RAM.

United States District Court, D. Nevada.

Feb. 25, 2004.

Michael L. Blackmon, Carson City, NV, Pro se.

Jackie Crawford and Ted D'Amico, Julie Slabaugh, Nevada Attorney General's Office, Janet Traut, Nevada Attorney General's Office, Transportation Division, Carson City, NV, for Defendants.

## Order

EDWARD C. REED, JR., District Judge.

The instant matter involves plaintiff Michael L. Blackmon's Objections (# 85) to the Magistrate Judge's Report and Recommendation (# 83) dated September 15, 2003. The Magistrate's Report recommended granting defendants' motion to dismiss (# 73) plaintiff's *pro se* civil rights complaint without prejudice because of the "total exhaustion" rule. Defendants Jackie Crawford and Theodore D'Amico filed a Partial Objection (# 86) to the Magistrate's Report and Recommendation and a Response (# 90) to plaintiff's objections. We review the portions of the Report to which written objections are properly submitted *de novo* under 28 U.S.C. § 636, Federal Rule of Civil Procedure 72(b), and Local Rule IB 3–2(b).

### Background

The Report and Recommendation concisely and succinctly describes the facts of this case. The Magistrate's summary of facts is hereby adopted. Nevertheless, for context, a short summary of the relevant facts of this case follows.

Plaintiff Michael L. Blackmon ("Blackmon") filed a *pro se* civil rights complaint (# 6) pursuant to 42 U.S.C. § 1983 alleg-

ing mistreatment by prison physicians and officials after Blackmon was "crushed in an electronic gate" at Lovelock Correctional Center. Blackmon brings this complaint claiming damages arising from the incident itself as well as the subsequent allegedly deficient medical attention devoted to his injuries, including complications arising from his pre-existing hepatitis C. Blackmon asserts three counts against various defendants, including Jackie Crawford, who is the Director of the Nevada Department of Corrections, Dr. Theodore D'Amico, Douglas Little, a Correctional Officer, Dr. Richard Long, Dr. William Sanders, and Tholl Fence, Inc.[1]

In Count I, Blackmon asserts a violation of his Eighth Amendment right against cruel and unusual punishment because defendant Little allegedly closed the electronic gate on Blackmon, causing him injuries for which defendants did not provide immediate medical treatment. In Count II, Blackmon asserts a violation of his Fourteenth Amendment right to equal protection because his treating physicians, defendants Drs. Long and D'Amico, allegedly failed to provide adequate medical treatment. In Count III, Blackmon alleges a violation of his Eighth Amendment right to be free of cruel and unusual punishment for the allegedly improper treatment provided by defendant Dr. Sanders, including the non-treatment of Blackmon's hepatitis C condition.

Count II and all claims against Tholl Fence, Inc. have been dismissed by prior order of the court (# 10). Defendants Dr. Hugh Sanders and Dr. Richard Long have also been dismissed by the court's order (# 72) for failure of timely service under Fed.R.Civ.P. 4(m). The court entered a default (# 66) on Correctional Officer Douglas Little, who failed to plead or otherwise defend after notice by publication. The remaining defendants, Director Crawford and Dr. D'Amico, filed a Motion (# 73) for Summary Judgment Or In The Alternative Motion to Dismiss For Failure to Exhaust Administrative Remedies. Plaintiff responded (# 80) and defendants replied (# 81).

### Exhaustion under the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), which governs suits such as this one brought by a prisoner, states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Failure to exhaust administrative remedies under 42 U.S.C. § 1997e is an affirmative defense that should be raised in a unenumerated Rule 12 motion.[2] *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Defendants bear the burden of raising and proving the absence of exhaustion. *Id.* Although failure to exhaust non-judicial remedies that are not jurisdictional should be treated as a matter of abatement, a court may look beyond the pleadings and decide disputed issues of fact in

---

1. Apparently, Blackmon identified certain defendants incorrectly in his complaint. According to Blackmon, Dr. William Sanders is really Dr. Hugh Sanders and Douglas Little is actually Larry Douglas Little. (# 33).

2. Courts use the term "unenumerated Rule 12(b) motion" or "nonenumerated Rule 12(b)

motion" because the motion is not brought under any of the seven numbered subparts of Rule 12(b) of the Federal Rules of Civil Procedure. *See Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir.1988).

deciding a motion to dismiss for failure to exhaust non-judicial remedies. *Id.* at 1119–20. The proper remedy for failure to exhaust a claim is dismissal of that claim without prejudice. *Id.* at 1120.

## Count III—Unexhausted

■ Defendants raise the plaintiff's failure to exhaust Count III in their summary judgment motion. Blackmon counters that he had in fact exhausted his administrative remedies because the 15–day period for filing an administrative claim had expired by the time he discovered his injury from the alleged mistreatment of his Hepatitis C. The Magistrate Judge determined that Blackmon did not exhaust his administrative remedies with respect to Count III.

Blackmon claims that no administrative remedy was available because he discovered his injury after the 15–day time limit for bringing a claim under Nevada Department of Corrections' Administrative Regulation ("AR") 740 had expired. Although Blackmon maintains that he in fact exhausted Count III in his opposition to the motion and his objections to the Magistrate's Report, it is clear that Blackmon did not in fact exhaust his claims in Count III. Blackmon filed his grievances on August 6, 1999 and the process apparently was finalized on November 11, 1999, but Count III claims damages from inadequate treatment of Blackmon's Hepatitis C beginning on February 25, 2000. The grievances do not mention the mistreatment of Hepatitis C. Although this claim was possibly time barred, Blackmon did not attempt to bring an administrative claim under AR 740. Clearly, Blackmon did not exhaust the distinct claims regarding his Hepatitis

C in Count III because the grievances did not mention Hepatitis C and Blackmon filed the grievances before the alleged mistreatment of his Hepatitis C began.

## Count I—Exhausted

■ The Magistrate Judge determined that Blackmon exhausted his claims in Count I by filing the aforementioned grievance. However, the defendants argue in their motion and their Partial Objection to the Report and Recommendation that Blackmon was required to exhaust state tort claim procedures under Nevada Revised Statutes ("NRS") 209.243 as well as the institutional grievance process.[3]

However, the plain language of 42 U.S.C. Section 1997e(b) indicates that the PLRA refers to institutional grievance procedures and not to general state tort claim procedures. 42 U.S.C. Section 1997e(b) ("[t]he failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under 1997a or 1997c of this title."). There is no requirement for exhaustion of state tort claim procedures for filing a civil rights action in federal court. *See, e.g., Heck v. Humphrey,* 512 U.S. 477, 480, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); *Rumbles v. Hill,* 182 F.3d 1064, 1069 (9th Cir.1999) (stating that, while "Congress certainly intended to require prisoners to exhaust available administrative grievance procedures, there is no indication that it intended prisoners also to exhaust state tort claim procedures."), *overruled on other grounds by Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Therefore, we conclude that the Magistrate Judge correctly determined that Blackmon had ex-

---

**3.** NRS 209.243(1) provides that "[a] prisoner or former prisoner may file an administrative claim with the department to recover compensation for ... personal injuries or any other claim arising out of a tort alleged to

have occurred during his incarceration" as a result of any act or omission of the Department of Corrections or its agents, former officers, employees, or contractors. NRS 209.243(1).

hausted the claims in Count I by filing the administrative grievance, and Blackmon was not required to pursue his claim through NRS 209.243.

Although Blackmon had exhausted his administrative remedies for Count I by filing the aforementioned grievances, the Magistrate Judge recommended that Blackmon's entire complaint be dismissed without prejudice for failure to exhaust the claims in Count III. The Magistrate Judge cited the "total exhaustion" rule, which would require the dismissal of the entire action if any claim is unexhausted, as persuasive in forming her recommendation. We now turn to an examination of the "total exhaustion" rule.

### Total Exhaustion

Federal district courts have split over the issue of whether the PLRA requires dismissal of prisoner "prison condition" complaints brought in a "mixed" action— containing both exhausted and unexhausted claims. *Compare Smeltzer v. Hook,* 235 F.Supp.2d 736,· 745–46 (W.D.Mich. 2002) (applying "total exhaustion" to dismiss "mixed" petition without prejudice), *and Rivera v. Whitman,* 161 F.Supp.2d 337, 343–44 (D.N.J.2001) (same), *abrogated on other grounds by Ray v. Kertes,* 285 F.3d 287, 293 n. 6 (3d Cir.2002), *and Thorp v. Kepoo,* 100 F.Supp.2d 1258, ·1263 (D.Haw.2000) (same), *with Johnson v. True,* 125 F.Supp.2d 186, 188–89 (W.D.Va. 2000) (refusing to apply "total exhaustion" rule and dismissing only unexhausted claims), *and Jenkins v. Toombs,* 32 F.Supp.2d 955, 959 . (W.D.Mich.1999) (same), *and Cooper v. Garcia,* 55 F.Supp.2d 1090, 1095 (S.D.Cal.1999) (same), *and Scott v. Gardner,* 287 F.Supp.2d 477, 487 (S.D.N.Y.) (same). The Western District of Michigan exemplifies this conflict. In *Alexander v. Davis,* 282 F.Supp.2d 609 (W.D.Mich.2003), the court examined the Western District of Michigan's conflicting court opinions in *Jenkins* and *Smeltzer* regarding "total exhaustion" and commented that various unpublished decisions in the district had split on the total exhaustion rule. The court eventually held that *stare decisis* dictated that the previous decision in *Jenkins* not to apply the total exhaustion rule was controlling precedent over *Smeltzer* until the Sixth Circuit, a majority of Circuits, or the Supreme Court decided the issue. *Id.* at 612–13.

The Eighth Circuit, the only circuit court to rule on this issue, applied the "total exhaustion" rule without an in depth policy discussion. *Graves v. Norris,* 218 F.3d 884, 886 (8th Cir.2000); *but see Kozohorsky v. Harmon,* 332 F.3d 1141, 1144 (8th Cir.2003) (district court abused its discretion by refusing to allow petitioner to amend his complaint to dismiss unexhausted claims before applying "total exhaustion" rule).

### Argument for Total Exhaustion

The courts that have applied the "total exhaustion" rule focus on the plain meaning of 42 U.S.C. § 1997e(a) and the underlying policies of the PLRA to discourage frivolous litigation. *See Smeltzer,* 235 F.Supp.2d at 743. Section 1997e(a) provides that "No *action* shall be brought with respect to prison conditions ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a) (emphasis added). By using the word "action" instead of "claim," some courts have reasoned that Congress intended that a prisoner exhaust all claims before proceeding with his action. *Smeltzer,* 235 F.Supp.2d at 744. If Congress had intended to permit piecemeal litigation of claims relating to prison conditions, then the statute would have precluded just unexhausted claims and not actions. *Thorp,* 100 F.Supp.2d at 1263.

The courts applying the "total exhaustion" rule typically also analyze the use of the terms "claim" and "action" in other parts of the PLRA in order to bolster the applicability of the "total exhaustion" interpretation. Section 1997e(c)(2) allows the court to dismiss a "claim" that is frivolous, malicious, or fails to state a claim. The courts that have applied the total exhaustion rule argue this works in tandem with Section 1997(a) and Section 1997(e)(1) by allowing the court to dismiss an unexhausted claim as frivolous, thus preventing an unexhausted *claim* from "holding up" the dismissal of a frivolous *action* of otherwise exhausted claims. *Smeltzer*, 235 F.Supp.2d at 744 (quoting *Rivera*, 161 F.Supp.2d at 341).

Finally, the courts rely on the policy interests of discouraging frivolous litigation and conserving judicial resources behind the PLRA to support a total exhaustion rule. If the only penalty for bringing a mixed complaint were dismissal of the unexhausted claims, then there would be nothing to deter prisoners from continuing to bring these suits. *Id.* at 745. The assessment of a second filing fee serves as a deterrent against filing unexhausted or frivolous claims. *Id.*

### Argument against Total Exhaustion

■ While several courts and the Magistrate Judge in this case found the reasoning favoring the "total exhaustion" rule persuasive, we are not convinced of either its applicability or its efficiency. As the *Jenkins* court reasoned, nothing in the statutory language compels the imposition of the total exhaustion requirement. *Jenkins*, 32 F.Supp.2d at 957. Second, nothing in the extensive legislative history of the PLRA suggests that Congress intended to apply the total exhaustion rule. *Id.* at 958; *see Alexander*, 282 F.Supp.2d at 610 (commenting that the use of the word "action" rather than "claim" is a "thin reed upon which to hang [the total exhaustion rule] since the legislative history of the statutory section demonstrates no concern with this issue").

Furthermore, the total exhaustion rule is not necessary to give effect to the PLRA because the new language in the PLRA can be read to make exhaustion mandatory by prohibiting courts from continuing cases to allow exhaustion or from excusing exhaustion. *Jenkins*, 32 F.Supp.2d at 958. The district court faced with exhausted and unexhausted claims can read the PLRA as a command to either dismiss the entire complaint or to dismiss just the unexhausted claims. *Id.* at 957. The phrase "no action shall be brought" does not compel either interpretation. *Id.* In fact, in the context of habeas petitions, the Supreme Court held that similar language did not, in and of itself, impose a total exhaustion requirement. *Id.* at 958 (citing *Rose v. Lundy*, 455 U.S. 509, 516–17, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)).

Ultimately, the resolution of this issue tends to hang on policy grounds. In amending the PLRA to make exhaustion mandatory, Congress intended to bring relief to an overburdened federal court system. *Id.* The "total exhaustion" rule does little to further this or any goal of the PLRA because the prisoner can simply refile his complaint and the exact same issues will be before the court. *Scott*, 287 F.Supp.2d at 488. We believe that this is a persuasive policy argument—that the total exhaustion rule would not necessarily promote judicial economy because the prisoner would merely file a new suit alleging only the exhausted claims. *Cooper*, 55 F.Supp.2d at 1095. This would merely delay the resolution of claims that are not frivolous and the increased filings would tend to increase rather than decrease the burden on federal district courts. *Id.*

Furthermore, to a certain extent, forcing a prisoner filing *in forma pauperis* to "pay the full amount of a filing fee" to refile his complaint would be "unduly punitive" and "may amount to nothing more than a monetary penalty against the prisoner." *Scott,* 287 F.Supp.2d at 488 (citing *Jenkins,* 32 F.Supp.2d at 959); 28 U.S.C. § 1915(b)(1) (requiring prisoners filing *in forma pauperis* to "pay the full amount of a filing fee" to refile the exhausted claim). Although additional filing fees may prove a disincentive from bringing a mixed petition in theory, we believe that such incentives will have little effect because many prisoners do not understand the exhaustion rule in the first place.[4] The imposition of a second filing fee will only act as an incentive if *pro se* prisoners are aware of the consequences of filing mixed petitions.

**Total Exhaustion is Unduly Punitive**

We are not convinced that many prisoners filing *pro se* are aware or understand the exhaustion requirement itself. *See generally Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988) (courts should liberally construe pro se pleadings, particularly where civil rights claims are involved). At this stage in the judicial development of the "total exhaustion" rule, *pro se* prisoners cannot be held to understand the consequences of the "total exhaustion" rule when the federal courts are widely split on whether or not it even applies. *But see Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (commenting that "[j]ust as *pro se* petitioners have managed to use the federal habeas machinery, so too should

they be able to master this straightforward exhaustion requirement.").

In the context of a disputed interpretation of an unclear rule, forcing Blackmon to pay another filing fee to amend his complaint would be unduly punitive and would not advance any of PLRA's objectives as, once Blackmon amends his complaint, this court will be left with the exhausted claims in Count I. Judicial economy would be best preserved by reaching the merits of the claims in Count I. Therefore, given the split in the federal courts over the total exhaustion rule, the unclear directive of the plain language of the PLRA, and the competing policy interests, we do not believe that the "total exhaustion" rule should be applied in the instant circumstance without permitting the plaintiff to amend his complaint to delete the unexhausted claim or claims. *See Kozohorsky,* 332 F.3d at 1144 (district court abused its discretion in denying plaintiff's request to amend his complaint to drop the unexhausted claims). Such a result would be unduly punitive to Blackmon.

**Habeas Permits Prisoner to Amend the Complaint**

In the habeas context, the Supreme Court has determined that *pro se* litigants who misunderstand the exhaustion requirement are entitled to resubmit a petition with only exhausted claims or to exhaust a remainder of their claims. *Rose v. Lundy,* 455 U.S. at 520, 102 S.Ct. 1198. The Court also mentioned that a prisoner

---

**4.** Webster's defines "incentive" as "something that incites or has a tendency to incite to determination or action." Webster's New Collegiate Dictionary 608 (9th ed.1984). Clearly, if *pro se* prisoners are unfamiliar with the "total exhaustion" rule and the possibility of incurring a second filing fee, the second filing fee is hardly an incentive because it will

not tend to alter the prisoner's actions. The prisoner must be aware of the rule and its consequences before it can be said to incite the prisoner to file only exhausted claims. Imposing a second filing fee on an unaware *pro se* litigant in this circumstance might be unduly punitive.

could amend the petition to delete the unexhausted claims. *Id.*

As an analogy to habeas jurisprudence, we believe that plaintiff should have the opportunity to amend his complaint in order to drop the unexhausted claims in Count III. *See Kozohorsky,* 332 F.3d at 1144 (analogizing exhaustion under habeas jurisprudence to exhaustion under the PLRA and holding that the district court abused its discretion in denying plaintiff's request to amend his complaint to drop the unexhausted claims); *see also Alexander v. Davis,* 282 F.Supp.2d 609, 612 (W.D.Mich. 2003) ("[I]f a total exhaustion rule must be applied, it must be ameliorated by other rules of law, typically applicable to habeas corpus actions, which prevent it from being applied unjustly.").

### Conclusion

Therefore, plaintiff shall have twenty (20) days from the date of this order within which to amend his complaint to remove the unexhausted claims of Count III. The plaintiff is cautioned that the court is solely permitting him to drop the unexhausted claims in Count III. Plaintiff is not to add new claims or allegations. If plaintiff fails to properly amend his complaint within this time, then we will reconsider the applicability of the total exhaustion rule to a situation where the prisoner was given an opportunity to assert only exhausted claims and refused to so comply. Plaintiff is cautioned that failure to properly amend his complaint may likely result in *sua sponte* dismissal of the action by the court.

***THEREFORE, IT IS HEREBY ORDERED THAT,*** as addressed above, defendants' Motion to Dismiss For Failure to Exhaust Administrative Remedies (# 73) is **DENIED.**

***IT IS FURTHER ORDERED THAT*** the Report and Recommendation (# 83) of the Magistrate Judge is not approved, as set forth above.

***IT IS FURTHER ORDERED THAT*** plaintiff shall have twenty (20) days within which to file an amended complaint in accordance with this order.

***IT IS FURTHER ORDERED THAT*** defendants' Motion for Summary Judgment (# 73) is **DENIED** without prejudice as moot in light of the court permitting plaintiff to file an amended complaint. Defendants can renew their summary judgment motion once plaintiff files an amended complaint.